[Civ. No. 15607.   First Dist., Div. Two.   Jan. 18, 1954.]

ROYAL LEONARD, Plaintiff and Appellant, v. JOHN
HUSTON, Defendant and Appellant.

Morse & Richards and Paul D. Morse for Plaintiff and Appellant.

Gibbs & Gideon and David B. Gideon for Defendant and Appellant.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of Alameda County in a quiet title action, decreeing that defendant and cross-complainant Huston convey two parcels of property to plaintiff and cross-defendant Leonard upon receipt of the balance of the purchase price in the amount of $13,853.32 with interest at 7 per cent from entry of judgment, and determining that Leonard as equitable owner of the property was entitled to the accrued rentals over the period from August, 1944, to 1951. Cross-complainant Huston appeals on the ground that interest should have been awarded to him, not from the date of entry of judgment, but from the date the rentals began to accrue—August, 1944.

The appeal is presented on an agreed statement which summarizes the pertinent facts as follows:

Appellant John Huston, defendant and cross-complainant below, met appellant Royal Leonard, plaintiff and cross-defendant below, in March, 1944. Huston had recently purchased two tracts of land in Oakland and was engaged in building apartments upon them. Neither Huston nor Leonard were licensed contractors. The first tract, located on Atherton Street in East Oakland, comprised six adjoining lots, on which Huston was building six duplex dwellings. This site cost $5,000. Huston had a bank loan of $3,000 on the land and a Federal Housing Administration construction loan of $6,900 on each of the six duplex units. Six other duplexes were being built by Huston on various other sites, making a total of 12 duplex dwellings which were under construction when Huston and Leonard first met in March of 1944.

The second site, which was located on Derby Street, also in East Oakland, cost Huston $12,000 and it, too, embraced six lots. On these he had just commenced construction of six four-unit apartments, or four-plexes. Each of these units was financed by a Federal Housing Administration loan of $12,000. There was no loan against the land.

At the time Leonard met Huston construction on the Atherton duplexes was well under way; the Derby project had just been commenced. Leonard expressed interest in the Atherton project and indicated that he had capital to invest. Huston asked him whether he would like to participate in that venture. Several discussions were had between the two men. On March 13, 1944, they entered into the following agreement:

"Oakland 6, California
March 13, 1944

"Agreement

"It is hereby agreed that Royal Leonard shall pay all of the out of pocket expenses for the completion of twelve duplexes six on Atherton Street, three on Fifty Fifth Avenue, one on Bancroft, one on Olive Street and one on Quigley. This amount shall be all of the expenses above the loan. It shall include interest, F.H.A. closing and similar charges. In the future, Royal Leonard has the option of dividing the duplexes.

"Royal Leonard is to receive a one-half interest in the twelve duplexes.

"Royal Leonard shall pay in addition the sum of $1200 twelve Hundred and no cents for participation in the deal.

> (Signed)   Royal Leonard
>
> (Signed)   John Huston."

The contract was prepared jointly and was typed by Huston at his apartment in the presence of Leonard.

Four days later, after Leonard remarked that he had additional capital available for investment, a second agreement was entered into covering the Derby tract. That contract, which was also prepared jointly at Huston's apartment, read as follows:

> "Oakland 6 California
> March 17, 1944

"Agreement

"It is hereby agreed that Royal Leonard shall pay all of the expenses for the completion of six four unit dwellings located on East Fifteenth street between Derby and Thirty First Ave. (two on one of the side streets mentioned).

"In return he shall receive one half interest in the six four unit buildings (he being Royal Leonard.)

"The cost shall be all of the costs necessary to build the buildings including office expenses. F.H.A. costs, Fire insurance, surveys, taxes R. L. with no pro-rating of these J. H. R. L. costs as in a regular sale.

"This agreement is effective this day.

"Royal Leonard has the option of dividing the buildings in the future.

"Payment to be made within 30 days.   J.H.   R.L.

> (Signed)   Royal Leonard
>
> (Signed)   John Huston."

Upon signing of the first contract Leonard gave Huston a check for $4,500. He gave him an additional $7,500 on March 31st. Leonard also paid $386.45 to cover certain taxes which fell due on the property while appellant Huston was out of town. Thus the total amount paid by Leonard for participation in the venture was $12,386.45.

In return for this investment Leonard selected as his half of the properties, the six Atherton duplexes and three of the four-plexes on Derby Street. The other half of the properties were retained by Huston and are not involved in this dispute. The duplexes were finished in June, 1944, and the four-plexes

in September. They were immediately rented, through an agent. Deeds to both properties were prepared and acknowledged by Huston on March 27, 1944. Leonard claimed the deeds were delivered to him but Huston denied it.

During construction of the buildings a dispute had arisen between Huston and Leonard as to how much Leonard was supposed to pay for participation in the two ventures. At various times after the second check was made out by Leonard, Huston had demanded additional amounts from Leonard, but the two were unable to agree on the amount due. The disagreement was twofold: first, the amount properly due Huston as "expenses" or "building costs" under the two contracts, and, second, whether or not the cost of the land was to be paid by Leonard under the terms of the two contracts. It was stipulated during the trial which ensued that the cost of the land—$5,000—was included in the first (Atherton) contract and was to be paid by Leonard, but Leonard denied that he was to pay for the cost of the land—$12,000— under the terms of the second contract.

On July 14, 1944, Leonard commenced this action against Huston, claiming title to the two properties, alleging that Huston asserted an adverse interest, and praying that Leonard's title be quieted as against Huston. Huston, on August 4, 1944, filed an answer and cross-complaint, denying Leonard's claim of title and alleging that Leonard still owed over $16,000 on the two contracts. In addition, Huston asked $1,800 damages for Leonard's failure to fulfill his contractual obligations.

The case came to trial before the court sitting without a jury on February 26, 1944. It was continued thereafter from time to time by stipulation of counsel, for further trial and written and oral argument. Findings of fact and conclusions of law were entered on May 23, 1951, and judgment was ordered in accordance therewith on June 5, 1951.

Because of the dispute the rents had been collected and held by a receiver from August, 1944, to date.

The court found that on March 13, 1944 (the date of the first written agreement), defendant Huston had on deposit with the Central Bank of Oakland, sufficient funds, together with financing by F. H. A., to completely pay for construction of the 12 duplex buildings; and that on March 17, 1944 (the date of the second written agreement), Huston had on deposit with the Central Bank, sufficient funds, together with fi-

nancing by F. H. A. loan, to completely pay for construction of the six four-unit dwellings. It was found that the written agreements of March 13 and March 17, 1944, constituted agreements of joint venture whereby investments above the amount of loans obtained thereon were to be made by plaintiff Leonard, and the management was to be done by defendant Huston, and that their intent was to divide the properties equally; that the balance of the construction costs was not ascertainable at the time the improvements were completed and could not be determined until the court's accounting was completed, and that Leonard was ready, able and willing to pay Huston all sums properly due but that Huston has at all times refused to convey said property *except on condition that Leonard pay a sum substantially greater than the amount found due by the court.* (Emphasis ours.)

It was further found that the agreements of March 13 and 17, 1944, were ambiguous; that construing them in the light of surrounding circumstances, the conduct of the parties and the stipulations in the record, the two agreements, despite their different wording, meant the same with respect to the items to be included in "all of the out of pocket expenses for the completion of twelve duplexes" in the agreement of March 13th and "all of the expenses for the completion of six four-unit dwellings" in the agreement of March 17th, and that the cost of the land upon which the buildings were to be constructed was to be included in such expenses to be paid by plaintiff and cross-defendant Leonard. It was found that the office expenses incurred by Huston amounted to $585; that plaintiff was not in default because the amounts payable by plaintiff to defendant pursuant to these agreements were not ascertainable until determined by the court's accounting; that the total amount due from plaintiff Leonard to defendant Huston for the cost of the land and office expenses was $13,853.32 with interest at 7 per cent from date of entry of judgment. The accrued rentals were determined to be due Leonard, subject to deduction of the amount owing by Leonard to Huston.

### Huston's Appeal

Defendant and cross-appellant Huston contends that it was reversible error to fail to allow Huston interest on the sum of $13,853.32 prior to judgment, maintaining that the effect of the judgment is to allow Leonard the free use of Huston's money for a period of seven years while at the same time giving him the benefit of the rentals for that period.

In *Brandt* v. *Clark*, 81 Cal. 634, 641 [22 P. 863], it was held not to be unjust to require defendants to pay interest since they had been in possession and had the use of the property during all of the time that interest was allowed. It has been said that the estate and purchase money are things mutually exclusive and neither party is entitled to the enjoyment of both. (75 A.L.R. 325; Fry on Specific Performance, 5th ed., §§ 1399, 1402, 1404; Pomeroy, Specific Performance, 3d ed., § 427; 23 Cal.Jur. 513, § 69.)

Respondent contends that the above authorities hold that the court in the situations dealt with therein *may* grant interest, but do not hold that in such equitable proceedings the court *must* grant interest. With this contention we agree.

Appellant contends that as a matter of law he is entitled to interest on the unpaid purchase price from the date it became due because of section 3287, Civil Code, which reads: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt." He contends that the only question is whether the damages are capable of "being made certain by calculation." The only major item in dispute, other than office expenses, was whether Leonard should pay the cost of the land involved in the second building agreement. Since this sum was $12,000, all but a small amount was readily determinable. Appellant cites *McCowen* v. *Pew*, 18 Cal.App. 482 [123 P. 354], a case upholding an award of interest against a vendee who contended that the amount was uncertain. However, that case appears to go no further than to hold that it is discretionary with the court to order or withhold interest. The court stated that neither section 3287 nor section 1917 were intended to take away all discretion from the court in such a case, and that the appellate court would review only for an abuse of discretion.

It is true that the amount of $12,000, the purchase price of the land, was easily ascertainable. However, the court found that defendant Huston at all times refused to convey except upon condition that Leonard pay "a sum substantially greater than the amount herein fixed by the court as properly due." The court also found that the balance was not ascertainable upon completion of the im-

provements and would not be ascertainable until entry of judgment herein. Defendant Huston does not attack the finding that he demanded a sum substantially greater than that found to be due, as unsupported by the evidence. It was therefore necessary for plaintiff to file suit before he could determine the amount he was to pay. ■ If a court of equity may award damages to compensate for the unreasonable demands of a buyer, it may also withhold interest to compensate for the unreasonable demands of a seller. Plaintiff was the first party to resort to a court of equity to have determined the amount that was justly due. In *May* v. *Hunt, Hatch & Co.,* 75 Cal.App. 283 [242 P. 735], it was held that as the amount of plaintiff's claim was not ascertainable until judgment was entered, plaintiff's right to interest did not arise until the entry of judgment.

■ Although appellant has argued that plaintiff will enjoy the use of his money and the rentals also for the seven-year period, it is to be noted that the rentals until the time of trial were in the hands of a receiver, hence plaintiff was not enjoying the benefit of that money during those years. Furthermore, more than $5,000 was deducted from the rentals as compensation for the receiver and an accountant.

### Leonard's Appeal

Plaintiff Leonard appeals on the ground that the cost of the land ($12,000) was not properly chargeable against him under the agreement of March 17, 1944. He contends that the plain reading of the contract shows that the cost of the land was excluded. The words "pay all of the expenses for the completion of six four-unit dwellings" can mean only the unpaid balance of the costs of construction. To include the cost of the land, appellant contends, changes the plain meaning of the language used, and it was therefore erroneous to interpret this contract with reference to the contract of March 13, 1944, and by parol evidence. Appellant had stipulated that in the case of the first contract which provided for the payment of "all out of pocket expenses for the completion of twelve duplexes" and "all of the expenses above the loan," the cost of the land was included as an expense chargeable to him. This admission, he maintains, evidently influenced the trial judge to conclude that if it was true in one case it probably was true in the other, and led him to hold that an ambiguity existed in the second contract. ■ Surrounding circumstances and subsequent conduct may be invoked to aid interpretation only where on the face of

the contract there is doubt as to its meaning. (*Purdy* v. *Buffums,* 95 Cal.App. 299 [272 P. 770]; *Sass* v. *Hank,* 108 Cal.App.2d 207 [238 P.2d 652].)

Appellant maintains that the contracts are independent of each other. ▮ Similarity of form or of the circumstances giving rise to the contracts is not reason enough to interpret one with reference to the other, unless the meaning cannot be ascertained from the contracts themselves. (*Briggs* v. *Marcus-Lesoine, Inc.,* 3 Cal.App.2d 207 [39 P.2d 442]; *Jameson* v. *Chanslor-Canfield M. Oil Co.,* 176 Cal. 1, 8 [167 P. 369]; *Moreng* v. *Weber,* 3 Cal.App. 14 [84 P. 220]; 6 Cal.Jur. 304, § 184.)

Appellant emphasizes the fact that the contracts were entered into at different times—four days apart—and cites *San Francisco Milling Co.* v. *Frye & Co.,* 2 Cal.App.2d 563 [38 P.2d 165], in which it was contended that two contracts for the sale of seed should be construed together, citing section 1642, Civil Code, which provides that several contracts relating to the same matters between the same parties, and made as parts of substantially one transaction, are to be taken together. The contracts in the cited case were entered into on April 5 and May 15, 1930. The court stated: ''There appears to be no connection between them. They were separate and distinct sales of foul seed.'' Here, however, the trial court found that the contracts constituted agreements of joint venture in the construction of dwelling units whereby the investments above the loans were to be made by plaintiff Leonard, and the management of the ventures was to be assumed by Huston, the parties to divide the properties and profits equally. It was also found as a fact that Huston, prior to March 28, 1944, prepared deeds naming himself as grantor and Leonard as grantee, and describing these certain properties, that these deeds were duly acknowledged but that neither was delivered, it being agreed that they should be retained by defendant Huston as security for the sums due from plaintiff under the agreements.

Appellant stresses the slight differences in the wording of the two contracts, but read as a whole, they seem to be remarkably similar. He also argues that the fact that the first project was well under way when he put money into it, while on the second, work had just begun, made the first an investment and the second a speculation.

Respondent cites several authorities to the effect that the interpretation placed upon a written contract by a trial court

in the light of conflicting parol evidence is binding on appeal. (*Estate of Rule*, 25 Cal.2d 1 [152 P.2d 1003, 155 A.L.R. 1319] ; *Transportation Guar. Co.* v. *Jellins*, 29 Cal.2d 242 [174 P.2d 625] ; *Taylor* v. *J. B. Hill Co.*, 31 Cal.2d 373 [189 P.2d 258]), and with these authorities, appellant has no quarrel but notes that they become applicable only when it has been first determined that a contract is ambiguous. ▉ But whether or not it is ambiguous is a question of law, and the lower court's finding on this issue is not binding on the appellate court. (4 Cal.Jur. 10-Yr.Supp. (1943 Rev.) 148, § 192 ; *Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13] ; *Lane-Wells Co.* v. *Schlumberger Well S. Corp.*, 65 Cal.App.2d 180 [150 P.2d 251].) ▉ The court cannot rewrite the terms of a clear contract. ''The rule forbids adding by parol where the writing is silent as well as varying where it speaks . . .'' (4 Cal.Jur. 104, Supp., § 162.)

Appellant maintains that no extrinsic ambiguity is involved in the contract, and that where such is the case, the ambiguity should be pleaded and the contract reformed. ▉ It is true that there is no evidence or pleading in the instant case that the words have any technical meaning apart from their usual meaning. But as said in *Wells* v. *Wells*, 74 Cal. App.2d 449 [169 P.2d 23], parol evidence is admissible to explain ''what the parties meant by what they said.'' ▉ If the phrases ''all of the expenses for the completion of six four-unit dwellings'' and ''the cost shall be all of the costs necessary to build the buildings including office expenses, F.H.A. costs, fire insurance, surveys, taxes with no prorating of these costs'' are so very clear as to admit of no interpretation, then appellant's position is sound. But it appears to us that the general phrase ''all of the costs necessary to build the buildings'' can bear some further interpretation. Appellant cannot successfully maintain that the enumerated items such as fire insurance, taxes, etc., are a complete index of all of the costs necessary to build the buildings. If parol evidence is admissible to go into what expenses were considered by the parties as costs of constructing the buildings, it is reasonable to admit into evidence the interpretation given to this term by them in a very similar contract entered into a few days earlier as one of the surrounding circumstances throwing light on what was meant by the language used. We conclude that the trial court properly allowed parol evidence to explain and interpret the contract

in question. (See 6 Cal.Jur. 294, § 180; Civ. Code, § 1647; Code Civ. Proc., § 1860.)

In view of the foregoing it is our judgment that the findings and judgment of the trial court are supported by the law and evidence in the record before us.

The judgment is hereby affirmed.

Nourse, P. J., and Dooling, J., concurred.