[Civ. No. 6987.   Fourth Dist.   Dec. 5, 1963.]

ABC EGG RANCH, INC., Plaintiff and Respondent, v. GEORGE ABDELNOUR, Defendant and Appellant.

Horton, Knox & Carter and James H. Carter for Defendant and Appellant.

Pentony & Sjogren for Plaintiff and Respondent.

BROWN (R.M.), J.*—The respondent, ABC Egg Ranch, Inc., a corporation, filed its complaint against appellant asking for an accounting, dissolution of partnership, capital contribution by the appellant, and distribution of assets under an alleged oral partnership between the parties. The appellant in his general answer denied that there was a partnership with respondent as well as all other allegations in the complaint. The pretrial order stated that all the allegations were at issue.

After a trial the court found that the respondent and appellant had formed an oral partnership doing business under the name of "ABC Egg Ranch, Brawley" to carry on the business of operating a wholesale egg route, that the profits and losses were to be divided equally between the parties, that each partner was to make an equal capital contribution and that appellant did not contribute equal capital, that the appellant was to receive $100 per week for his services, that this action was filed to dissolve the partnership, to have ap-

*Assigned by Chairman of Judicial Council.

pellant render an accounting, that the parties had agreed that Foss and Simpson prepare an accounting and audit of the partnership business from July 11, 1958, until its termination, and also found that the appellant had drawn more than $100 per week salary as agreed upon. The conclusions of law set forth that the partnership be dissolved as of December 28, 1959, that the respondent have title and possession of a truck, that the appellant have title to an air conditioning unit purchased by the partnership, that the respondent was entitled to a judgment in the sum of $6,635.70, and that the cost of the audit of $600 be paid one-half by each party. Judgment was entered accordingly, from which appellant appeals, setting forth as his main claim that there was no evidence of a partnership existing between respondent and appellant and if there was any partnership it was between Walter Kimzey, president of respondent corporation, as an individual, and the appellant, and that accordingly, the judgment should be reversed. However, if not reversed, the appellant claims that the lower court erred in that there are no findings of fact and conclusions of law to support the judgment in the sum of $6,635.70, and that his request for counterfindings of fact should have been granted by the trial court.

The respondent corporation, through its president and sole owner Walter Kimzey, was the operator of a large egg ranch in Imperial County wholesaling eggs to various and sundry businesses throughout the area. The appellant likewise was engaged in a business of distributing eggs to various dealers in the nearby City of Brawley.

In June or July 1958 the appellant and Mr. Kimzey had certain conversations relative to appellant's taking over an egg route in Brawley, at which time Mr. Kimzey stated: "... we agreed to go into sort of a partnership and share the profits on this venture and I was to supply the eggs and he was to sell them." Kimzey had no eggs except those owned by the corporation. It was ultimately agreed that Kimzey would furnish the eggs, that appellant would sell the same at a cost of approximately 6 cents under the San Diego market price per case, that appellant was to receive $100 per week and the profits were to be shared 50-50, though appellant claims that he was to receive $150 per week when business improved, and it was agreed that they would get a used truck at a cost of approximately $1,100.

Appellant subsequently opened a bank account in the name

of ABC Egg Ranch in the Brawley Branch of Bank of America on July 24, 1958, being the sole person authorized to issue checks. Mr. Kimzey contributed $4,000 in eggs to start the business and appellant claims that he contributed his $4,000 although there is some conflict in this evidence, but was admitted by respondent at the trial.

The business had financial trouble and in June 1959 there was discussion between Kimzey and the appellant as to quitting business, with uncompleted offers of one selling out to the other. Ultimately Kimzey and appellant quit doing business with each other; Kimzey took the truck, receiving the pink slip, and appellant took the air conditioner. Then respondent filed suit against appellant, as set out above.

■ The first question which we have to consider is whether or not there was a partnership between the respondent as a corporation and the appellant. While there is little direct evidence on this point, we can refer to a partnership connoting a joint adventure, and as is said in *Nelson* v. *Abraham*, 29 Cal.2d 745, 749-750 [177 P.2d 931] : ''Such a venture or undertaking may be formed by parol agreement [citation], or it may be assumed as a reasonable deduction from the acts and declarations of the parties.''

■ In looking over the books of ''ABC Ranch, Brawley'' (Plaintiff's Exhibit), we find that the appellant has listed all of his disbursements in the purchase of eggs to ABC eggs (the corporation).

It is clear that appellant knew that he was discussing the purchase of eggs with Mr. Kimzey at the agreed price, that he knew that the corporation had other egg arrangements in Imperial County and that appellant might later get the whole of Imperial Valley and Yuma, Arizona, that he did buy eggs from ABC Egg Ranch, Inc., the respondent, that the corporation never did send him the eggs he needed or ordered and at the same time testified that ''he'' never did send him the eggs that he would order.

There is no doubt but that appellant knew that he was buying the eggs from ABC Egg Ranch, Inc. because he had paid to that corporation the sum of $160,000 or more, that he was in a partnership, that this ranch company which was a corporation was furnishing the eggs, and that Kimzey and ABC Egg Ranch, Inc. were one and the same.

In *Lyon* v. *MacQuarrie*, 46 Cal.App.2d 119, 124 [115 P.2d 594], the court said :

''Defendant urges that as the partnership rested in parol

the burden was upon plaintiff to establish it and its essential elements by clear and convincing evidence. [Citations.]

"While this is true, what is clear and convincing evidence is a question of fact addressed in the first instance to the trial judge. His finding on that question cannot be disturbed on appeal where, as here, there is substantial evidence supporting the finding of the existence of a partnership."

We think the findings of the court as to the existence of the partnership were correct, but the other findings were insufficient, and that the case should be reopened for the purposes of making proper findings as to the accounting and amount due respondent.

■ In 38 California Jurisprudence Second, Partnership, section 157, pages 125-126, it is said:

"In a suit for an accounting between partners, the important findings relate to the partnership relation and the amount of the balance due to the plaintiff. The findings should embody, moreover, not merely a statement of a balance due, but also an itemized statement of the account between the parties—at least in respect of its main features. The findings must set forth the partnership assets, their value, and the capital balances of the partners, though there is no requirement that the assets be particularly described. Though an oil lease assigned to the partnership by one partner is worthless, where it had value at the time of the assignment the court should make a finding as to its value at the time of assignment."

■ The appellant did object to the findings made, and proposed counterfindings. We believe that by so doing he protected himself under Code of Civil Procedure, section 634. See *Calloway* v. *Downie*, 195 Cal.App.2d 348, 353 [15 Cal. Rptr. 747], where the court said:

"Section 632 of the Code of Civil Procedure requires that findings shall 'fairly disclose the court's determination of all issues of fact. . . .' The prohibition of section 634 of the Code of Civil Procedure against inferred findings applies if the party attacking the judgment requested a specific finding on the issue in question. (34 State Bar J., p. 638.) The purpose of the legislation was to compel trial judges to make findings on all material issues of fact. [Citations.] Under section 634 of the Code of Civil Procedure, on the facts herein, we must resolve the ambiguity in favor of the appellants. And since the existence of agreement is material to respondent's case the court's decision in that regard must be reversed. [Citation.]"

We have examined all of the testimony and the accounts as offered by the respective parties and are unable to come to a conclusion as to the amount owed by the appellant in line with *Davis* v. *California Motors*, 73 Cal.App.2d 241, where the court said, at pages 246-247 [166 P.2d 52] :

"It is also true that in the absence of a reference, a mere statement of the balance due in the findings of the court is not a proper disposition of the action. (*Whann* v. *Doell*, 192 Cal. 680 [221 P. 899].) 'On the other hand, the contention that an account must be stated in accepted bookkeeping fashion cannot be maintained. ... Any procedure or record from which it can be intelligently ascertained what the issues were as to the controverted items and how these issues were disposed of by the trial court will suffice for the purpose, whether the matter appears from the findings, the decree or a bill of exceptions, showing the controversy, and the disposition thereof. . .' (*Whann* v. *Doell, supra*, 684, . . .)" (Italics omitted.)

On the reopening of the case the court should make findings on the question of whether or not the truck which was transferred over to the respondent by the appellant was a partnership asset and, if so, how much credit the appellant should receive for his half interest in the truck, as well as to how much credit should be given to the respondent for the air conditioning equipment which went to the appellant.

The trial court should also make a finding as to whether or not the appellant did actually contribute his $4,000 to the partnership, there being more than sufficient evidence to show that he did contribute these funds, as admitted by the respondent; a finding, also, that the respondent contributed $4,000 in eggs at the commencement of the partnership.

There should next be a finding as to whether or not the appellant was to be paid $100 per week and an additional $50 per week when the business improved, and if not, how much the excess was over $100 per week which he drew during the period of the partnership which is to be charged against his interest.

A finding should be made as to the date of the dissolution of the partnership.

There should be a finding, if true, that the respondent was entitled to a credit of $2,083.72 for eggs which were purchased by the partnership and unpaid for.

The appellant should contribute the excess advances as set forth above (which were shown in the C.P.A. accounting,

Plaintiff's Exhibit, at $5,500), out of which should be paid to the respondent $2,083.72 for eggs. Add to this balance the value of the truck and the air conditioning unit and the $16.10 cash on hand. This total should then be divided equally between the appellant and respondent, with a judgment in favor of respondent for its half, less the respective adjustments for the truck and air conditioner. If it should be determined that the appellant did not contribute his $4,000, then the judgment should be increased by $2,000.

We have carefully reviewed the financial statement (Plaintiff's Exhibit) prepared by the accountants and it indicates that the appellant owed to the partnership $3,376.97, while the partnership owed to respondent $4,206.74, or a difference of $829.77. After respondent is reimbursed $2,083.72 for the eggs which were not paid for, if so found, this would then accomplish the paying of the current liabilities of $2,083.72, and leave the truck and air conditioner as assets after depreciation of the value of $829.77 (including the $16.10 cash in the bank). Respondent would, according to this statement, if the advance of $5,500 is approved, receive $3,376.97 plus one-half of the cash on hand, and would have to pay appellant his share of the truck, less respondent's share of the air conditioning unit. Thus, we cannot see how the court arrived at the computation that appellant owed $6,635.70.

The court should also find as to whether or not the partnership was terminated under Corporations Code section 15030 by the acts of the parties in transferring the pink slip of the truck from the partnership to the respondent, and that the only obligation outstanding was the balance due for eggs owing to respondent.

There should also be a finding as to whether the egg route contributed by the respondent had any value at the time it was taken back by the respondent and if any, correlate it into the balances.

The court made a finding that after the suit was filed the respondent and appellant had agreed that the C.P.A. firm of Foss and Simpson prepare an accounting and, as a conclusion of law, that each party pay one-half of the $600 as costs charged for said services. There is no mention of this being one of the issues or stipulations in the pretrial conference. The court did not appoint an expert as set forth in section 1871 of the Code of Civil Procedure and in fact, said at the opening day of the trial, "I don't know why I should be the one to see that either one gets an accounting. It is your

problem.'' ■ Thus, the fee of an expert not appointed by the court is not allowable as a cost. *Zeibak* v. *Nasser*, 12 Cal.2d 1 [82 P.2d 375], cited by respondent, relates to appraisers' fees and not to accountants' fees, and is not applicable to this section.

■ The fee of an expert accountant appointed by and acting under the direction of the court is a chargeable cost in a partnership dissolution action. (*Estrin* v. *Fromsky*, 53 Cal. App.2d 253, 255 [127 P.2d 603].) ''Costs in an action in equity are matters within the discretion of the court'' (*Estrin* v. *Fromsky*, *supra*). This requires, however, that the court make an order under Code of Civil Procedure section 1871, even though it has discretion whether or not to allow such as a cost. See *Faulkner* v. *Hendy*, 79 Cal. 265, 266 [21 P. 754], where it is said:

''The question presented, therefore, is, whether it is proper where an expert is employed and is acting for one of the parties, to charge the same against the losing party as a part of the costs of the action. If the services of an expert are necessary for the proper presentation and determination of the case, he should be appointed by and act under the direction of the court. Where, as in this case, he is the employee of one of the parties, the temptation to act in the interest of such party must be apparent. Therefore, in order to secure his fair and disinterested services, he should be appointed by the court, and not by either of the parties, and if either party sees proper to employ the services of an expert for his own benefit, the court should not require the opposite party to pay for the services thus rendered.''

■ In ordinary costs, under Code of Civil Procedure section 1032, subdivision (c), the trial court has a broad discretion in fixing costs. (*Vangel* v. *Vangel*, 45 Cal.2d 804, 810 [291 P.2d 25, 55 A.L.R.2d 1385].)

The judgment is reversed with directions to the trial court to vacate the findings and judgment, and to reopen the case for the taking of such additional evidence as may be necessary to prepare proper findings as indicated herein and determine whether or not the cost of the accounting is an expense of doing business and should be paid by the partnership, and making the other corrections hitherto suggested.

Griffin, P. J., and Coughlin, J., concurred.