[Civ. No. 7155.    Fourth Dist.    Feb. 25, 1964.]

KWIKSET LOCKS, INC., Plaintiff and Respondent, v. STEWART COMMISSARIES, Defendant and Appellant.

148

Jacobs, Jacobs, Nelson & Witmer, Robert H. Jacobs and James M. Dodds for Defendant and Appellant.

Moss, Lyon & Dunn, David Howard Battin and Henry F. Walker for Plaintiff and Respondent.

BROWN (Gerald), J.—This is an appeal by defendant Stewart Commissaries (successor in interest to Stewart-Hill Commissary Service) from a judgment favoring plaintiff Kwikset Locks, Inc. (successor in interest to Gate-Way Inc.) on an alleged indemnity agreement wherein Stewart-Hill was indemnitor and Gate-Way was indemnitee.

The parties agree that the contract between them is contained, in two letters. The first letter dated February 14, 1949, was written by Stewart-Hill to Gate-Way. In it Stewart-Hill agreed to assume full responsibility for operating a company cafeteria for Gate-Way, furnishing operating personnel, food and supplies, food products, liability insurance, and Workmen's Compensation Insurance. Gate-Way was to determine all matters of policy establishing food prices, serving time, and provide ''adequate facilities and equipment so that satisfactory service may be performed.'' Operating expenses were to be paid by Stewart-Hill from a fund created through food sale receipts. Stewart-Hill was to be paid $250 a month for operating the cafeteria. The second letter, dated January 4, 1951, was written by Kwikset to Stewart-Hill and provided that Stewart-Hill was ''to indemnify and hold Kwikset Locks, Inc. harmless against any and all loss, damage and expense arising out of Stewart-Hill's operation of the cafeteria.''

An employee of Stewart slipped and fell on a defective floor matting in the cafeteria, and brought suit against Kwikset. Kwikset demanded that Stewart assume the defense and hold Kwikset harmless; Stewart refused and a judgment of $10,000 plus costs was rendered against Kwikset. Kwikset then brought the present action against Stewart, seeking and recovering indemnity for the aforementioned judgment. The trial court decided without a jury in favor of Kwikset.

This appeal involves the interpretation of the agreement between the parties represented by the two letters. Both parties agreed, and it is required that the two letters taken together be construed as the contract between them (Civ. Code, § 1642). We are guided by the fundamental rule of construction that a contract must be interpreted so as

to give effect to the mutual intention of the parties existing at the time of the contract, insofar as this is ascertainable and lawful (Civ. Code, § 1636). ■ A contract may be construed and explained by reference to surrounding circumstances under which it was made and the matters to which it relates (Civ. Code, § 1647; Code Civ. Proc., § 1860). ■ Where such circumstances were used by the trial court, an appellate court will adhere to an interpretation adopted by the trial court which is supported by the evidence and appears consistent with the intent of the parties. (*Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17].) ■ However, this court is not bound by the trial court's interpretation where there is no conflict in the evidence. (*Stevenson* v. *County of San Diego*, 26 Cal.2d 842, 844 [161 P.2d 553].)

■ Moreover, as stated in *Indenco, Inc.* v. *Evans*, 201 Cal. App.2d 369, 374 [20 Cal.Rptr. 90]: "It is a primary rule of interpretation that contracts must be construed from their four corners, and the intention of the parties must be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole." Guided by the foregoing we consider appellant's contentions on appeal.

■ Stewart contends that the contract should not be interpreted to provide Kwikset with indemnity for its own negligence. In the provision in question Stewart agreed "to indemnify and hold Kwikset Locks, Inc. harmless against any and all loss, damage and expense arising out of Stewart-Hill's operation of the cafeteria." This language falls short of expressly providing that Kwikset is to be indemnified for its own negligence. In *Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411, 415 [340 P.2d 604], the court observed: "The courts have consistently adopted the position that indemnification clauses are to be strictly construed against the indemnitee in cases involving affirmative acts of negligence on his part." The *Vinnell* case was distinguished in *Harvey Machine Co.* v. *Hatzel & Buehler, Inc.*, 54 Cal.2d 445, 447, 449 [6 Cal.Rptr. 284, 353 P.2d 924], as follows: "The question in the present case, as in *Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411 [340 P.2d 604], is whether such an indemnity clause operates to exculpate the indemnitee from the consequences of its own breach of duty where the clause does not expressly state that the damage so caused is intended to be included in the coverage of the clause. The question is one of

interpretation of contracts. . . . Throughout the opinion [*Vinnell* case, *supra*], however, it is manifest that it is the intent of the parties which the court seeks to ascertain and make effective. Where, as in the present case, the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement, there is no room for construction of the agreement. It speaks for itself.'' Like the *Vinnell* case, the instant case presents a question of interpretation of the contract, since the indemnity clause does not expressly provide that damages caused by Kwikset's own breach of duty are included. ■ Unlike the *Vinnell* case, there is no requirement that the indemnity provision be strictly construed against the indemnitee, since the instant case involves passive negligence. The inference could be drawn from the evidence that Stewart exercised substantial control over the premises where the injury occurred, and was at least partially responsible for making the premises safe. At most, any negligence on Kwikset's part would be in failing to meet the duty of care imposed upon an owner or occupier of land. In interpreting this agreement, unhampered by the aforementioned rule requiring strict construction against the indemnitee we cannot say that there was no evidentiary basis for the trial court's determination that the parties intended the indemnity agreement to indemnify Kwikset even from its own negligence.

■ ''An appellate court will accept or adhere to the interpretation of a contract adopted by a trial court where parol evidence was introduced in aid of its interpretation; where the evidence, although conflicting, supports the trial court's construction; or where the trial court's interpretation appears to be consistent with the intent of the parties.'' (12 Cal.Jur.2d 326.) Accordingly, appellant's contention that the indemnity agreement should not be interpreted so as to provide indemnity against Kwikset's own negligence is rejected.

Appellant's second contention is that the breach of a contractual duty by an indemnitee precludes indemnity when the indemnitee's breach caused the damage. Specifically, appellant has reference to Kwikset's agreement to ''provide adequate facilities and equipment so that satisfactory service may be performed.'' Appellant argues that breach of an express contractual duty is within the category of active negligence, citing *Phoenix Bridge Co.* v. *Creem*, 102 App.Div.

354 [92 N.Y.S. 855, 856]. Support of this contention is found in dictum in the case of *Cahill Bros. Inc.* v. *Clementina Co.*, 208 Cal.App.2d 367, 381 [25 Cal.Rptr. 301], in the following language: "The crux of the inquiry is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform the duty imposed upon him by law. (*San Francisco Unified Sch. Dist.* v. *California Bldg. etc. Co.*, *supra*, 162 Cal.App.2d 434, 445 [328 P.2d 785]; *Alisal Sanitary Dist.* v. *Kennedy*, *supra*, 180 Cal.App.2d 69, 79 [4 Cal.Rptr. 379]; *Phoenix Bridge Co.* v. *Creem*, 102 App. Div. 354 [92 N.Y.S. 855].) The thrust of these cases is that if the person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge or acquiescence in it on his part, *or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement*, he is deprived of the right of indemnity." (Italics added.) ▇ If breach of a contractual duty is treated in the same category as active negligence, it would follow that absent an express agreement for indemnification the indemnitee may not recover from the indemnitor where the indemnitee has breached a contractual duty. This result would be consistent with the statutory requirement that: "... the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) ▇ As stated in *Vinnell*, *supra*, at page 414: "It would appear that 'to be sufficient as an exculpatory provision against one's own negligence, the party seeking to rely thereon must select words or terms clearly and explicitly expressing that this was the intent of the parties.' (*Sproul* v. *Cuddy*, 131 Cal.App.2d 85, 95 [280 P.2d 158].)"

▇ Appellant's argument, however, is predicated upon the assumption that there was a breach of a contractual duty by Kwikset. The evidence shows that the mat on which the employee slipped and fell was taken care of daily by Stewart's janitor who rolled up the mats, cleaned them outside, and returned them to the cafeteria. Thus the trial court had evidence upon which it might find that there was no breach of a contractual duty as contemplated by the parties. The trial court might reasonably have concluded that omissions in the maintenance aspects of this job arrangement, particularly when such maintenance aspects were shared with Stewart,

fell short of breaching the agreement to provide adequate facilities and equipment so that satisfactory service may be performed.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 23, 1964, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1964.