[Civ. No. 24042. First Dist., Div. Four. Dec. 19, 1967.]

BERNARD Z. RABINOWITCH, as Trustee, etc., Plaintiff and Appellant, v. CALIFORNIA WESTERN GAS COMPANY et al., Defendants and Appellants.

152

Betts & Deane and William J. Betts for Plaintiff and Appellant.

Schumann & Ziering and William M. Ziering for Defendants and Appellants.

CHRISTIAN, J.—In this action for rent due under a lease, the trial court awarded the lessor $28,325 rent and $2,500 attorneys' fees. On appeal, the lessee contends that the award of rent involved, in effect, an unauthorized rewriting of the lease by the court and that attorneys' fees should not have been allowed as they had been waived by stipulation. The lessor's cross-appeal attacks both the trial court's failure to award interest upon unpaid rent which accrued before the date of entry of judgment, and the court's disallowance of $2,585 accounting fees as costs.

In his capacity as trustee for the benefit of Ida M. Brodsky, Rabinowitch leased to Atlas Propane and Gas Company a liquified petroleum gas distribution facility near Reno, Nevada. Performance of the lessee's obligations was guaranteed by its parent corporation, California Western Gas Company. The lease resulted from negotiations over an extended period between officers of the lessee corporations and Henry Brodsky, acting for Ida Brodsky before the establishment of the trust. At that time and for some years previously, Henry Brodsky had been operating a gas distribution business from the Reno plant. After preliminary drafts had been modified several times, the parties entered into a written lease by signing a text prepared by counsel for lessee. This case arose because the parties disagree as to the interpretation of contradictory language in the instrument governing the computation of rent.

The lease called for an undisputed basic rent of $350 monthly, plus "gallonage" of 3.2 cents for each gallon of gas sold by lessee within a designated marketing area. With regard to the accrual and payment of this part of the rent, the lease provided:

"a) *With respect to the first 562,500 gallons sold during the fiscal year July 1 and ending the following June 30,* said 3.2 cents per gallon shall be paid as follows: 1.6 cents of the per gallon rent charge shall be waived so long as Lessee or any of its affiliate companies or its parent company employs Henry H. Brodsky, as a consultant, at a monthly salary of not less than $750.00 per month.

"The remaining 1.6 cents of the per gallon rental charge shall be retained by Lessee for the benefit of Lessor, provided that said retained funds shall be used solely for the purchase of tanks, cylinders and meters or other capital improvements, . . . .

" . . . . . . . . . . . . . . . . .

"b) *With respect to all gallonage sold in excess of 562,500 gallons,* said 3.2 cents per gallon rental charge shall be payable as follows: 1.6 cents of the per gallon rental charge shall be accumulated and shall be paid annually to Lessor at the expiration date of each fiscal year ending June 30 on the basis of gallonage sold during said year. The remaining 1.6 cents of the per gallon rental charge shall be retained for the identical purposes for which the 1.6 cents per gallon retention is to be used for the first 562,500 gallons sold per year."

In parenthetical language the lease recited:

"(it being understood that during the fiscal year, Lessee shall pay to Lessor only the basic rent of $350.00 plus $750.00 per month on account of minimum guaranteed sales as provided in the following paragraph, payment of which $750.00 is waived so long as Henry H. Brodsky is employed as provided in paragraph (a) above.)"

It was further provided that "Lessee guarantees that it will make sales of not less than 281,250 gallons per year, . . ."

Arithmetical calculation shows the ambiguity of these provisions. Under paragraph "a" above, the one-half apportionment of gallonage which is to be paid in cash (1.6 cents per gallon for 562,500 gallons) equals $9,000 per year, or $750 per month, the same amount which was to be waived during Henry Brodsky's employment by lessee at a salary of $750 per month. Of course, the remaining 1.6 cents per gallon for the retained fund also amounts to $9,000 per year. Although paragraph "a" does not specifically state whether the 3.2 cents per gallon is to be paid annually or monthly, paragraph "b" refers to annual payment of a sum representing 3.2 cents per gallon for sales in excess of 562,500 gallons. A later paragraph of the lease provides that during the fiscal year

lessee shall pay lessor the $350 ground rent "plus $750.00 per month" on account of minimum guaranteed sales, $750 being waived so long as Henry Brodsky is employed. It is in the immediately following paragraph that 281,250 gallons, or one-half of the 562,500 gallons previously mentioned, is fixed as the minimum guaranteed gallonage. But if 281,250 gallons were sold, or gallonage therefore paid pursuant to the guarantee, the 1.6 cents per gallon payable as cash rent would amount to only $375 per month. The other 1.6 cents per gallon, of course, was to be paid into the retained fund annually. Therefore, the latter $375 could not be a *monthly* payment on account of minimum guaranteed sales.

Henry Brodsky's employment was terminated after the first half of October, 1963. The lessee had paid him $750 per month while he was employed and had also paid 1.6 cents per gallon into the retained fund. Lessee contends that after Henry Brodsky's employment was terminated it was only required to pay $375 cash per month to lessor, i.e., 1.6 cents times the guaranteed minimum gallonage of 281,250 gallons, plus 1.6 cents per gallon credited annually to the retained fund. Lessor, however, points to the provision, quoted above, that "Lessee shall pay to Lessor only the basic rent of $350.00 plus $750.00 per month on account of minimum guaranteed sales. . . ."

In order to resolve these ambiguities in the document, the trial court received extensive testimony regarding the negotiations which led to the execution of the lease. This evidence indicated that after desultory negotiations a first draft was prepared which contained a guarantee that lessee would sell not less than 562,500 gallons per year. This provision was in keeping with lessor's desire to be sure that monthly rent would be not less than $350 plus a further $750 cash which was subject to waiver during Henry Brodsky's employment. When lessee's attorneys had prepared the final form of the lease, Brodsky pointed out that the minimum gallonage had been cut in half. He accepted the explanation that if 562,500 gallons was guaranteed the effect would be a fixed liability of $1,500 monthly instead of $750. (This is because a full $750 would accrue to the retained fund.) Henry Brodsky testified that he and Ida accordingly understood that sufficient gallonage was guaranteed to produce cash rent, at 1.6 cents per gallon, amounting to $750 monthly, but that for purposes of computing amounts to be credited to the retained fund at a further 1.6 cents per gallon the guarantee of sales was limited

to 281,250 per year. The tendency of the evidence given by witnesses called in behalf of the lessee was generally inconsistent with the sequence related above; however, it was neither so clear nor so cogent as to compel the trial court to reject Brodsky's testimony.

Although the lessee's answer alleged that the lease "has been, or should by this action be, rescinded" the parties tried the case and argued the appeal upon the common assumption that the lease is a valid and subsisting instrument, the ambiguous provisions of which are to be construed by the court. According to the construction adopted by the trial court, the lessee was obligated to pay, in addition to the $350 per month ground rent: (1) $750 minimum rental monthly to the lessor, after the termination of Henry Brodsky's employment; (2) 1.6 cents per gallon sold during the year, annually to the retained fund; and (3) annually, the amount by which 1.6 cents per gallon sold during the year exceeds the total of $750 per month minimum rental payments made during the year.

■ Lessee contends that the trial court's findings are contrary to the general intent of the parties as expressed in the lease, claiming that extrinsic evidence of the parties' intention was improperly used by the trial court to vary the terms of the written agreement. But when the language used in a written instrument is ambiguous, parol evidence may be received to aid the trial judge in ascertaining the true intent of the parties, that is, to determine what the parties meant by what they said. (*Waverly Productions, Inc.* v. *RKO General, Inc.* (1963) 217 Cal.App.2d 721, 727-728 [32 Cal.Rptr. 73].) ■ "A contract may be construed and explained by reference to surrounding circumstances under which it was made and the matters to which it relates. (Civ. Code, § 1647; Code Civ. Proc., § 1860.)" *Kwikset Locks, Inc.* v. *Stewart Commissaries* (1964) 225 Cal.App.2d 146, 149 [37 Cal.Rptr. 248].) ■ Evidence relating to prior negotiations may be used to resolve ambiguities in the language of a contract. (*Du Frene* v. *Kaiser Steel Corp.* (1964) 231 Cal.App.2d 452, 457 [41 Cal.Rptr. 834].)

■ In the present case, the language used in the lease creates an ambiguity regarding the computation of rent. If lessee must pay the lessor $750 per month, then the clause of the lease which guarantees minimum sales of 281,250 gallons per year is rendered nugatory. On the other hand, if, as asserted by the lessee, only $375 per month need be paid, then

no effect is given to the clause relating to monthly payments of $750. The trial court resolved this ambiguity by reference to a prior draft of the lease and other evidence of the surrounding circumstances.

The trial judge filed a memorandum of decision setting forth his evaluation of the evidence:

"It seems abundantly clear that what occurred, thus precipitating this mass of confusion in the final lease as executed, is that the lessee wanted to reduce the guaranteed minimum rental from 562,500 gallons per year to 281,250 gallons, but neglected to make the necessary additional adjustments in the other portions of the lease to carry out this desired effect. It is likewise established that the lessor at no time agreed to this desired reduction and in fact at all times assumed that the lease called for a basic ground rental of $350.00 per month, and additionally as a minimum provided that lessee would either pay Mr. Brodsky the sum of $750.00 as a salary or in the alternative would pay the equivalent in rent. It is hornbook law that an ambiguity must be construed most strongly against the party who caused it [see Civ. Code, § 1654], which in this case is the lessee."

■ We should not have been bound by a construction of the lease made by the trial court if there had been no resort to extrinsic evidence or no conflict in that evidence. (*Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) ■ Here the trial court was compelled to resort to extrinsic evidence to ascertain the intention of the parties; that evidence proved to be in conflict. Therefore, we are bound by the interpretation of the trial court where, as we have related, there was substantial extrinsic evidence to support the findings and judgment. (*Parsons* v. *Bristol Dev. Co.,* *supra,* at p. 866, fn. 2; *Leoke* v. *County of San Bernardino* (1967) 249 Cal.App.2d 767, 772 [57 Cal.Rptr. 770].)

■ The lessee contends that the court below rewrote the lease, arguing that the general intent of the lease was to require payment of $350, plus $375 cash per month based on the guaranteed minimum gallonage of 281,250 gallons, plus 1.6 cents per gallon to the retained fund. Lessee relies upon the rule of construction that particular clauses are to be subordinate to the general intent of an instrument. (Civ. Code, § 1650.) However, the application of that rule to the present case works in favor of the lessor, not the lessee: if the particular clause relating to 281,250 gallons were eliminated, the remainder of the lease is entirely consistent. Paragraph

"a" of the language quoted above speaks of 562,500 gallons. Monthly rental calculated at 1.6 cents per gallon on 562,500 gallons equals $750 per month, which is consistent with the parenthetical clause, "(it being understood that during the fiscal year, Lessee shall pay to Lessor only the basic rent of $350.00 plus $750.00 per month . . . as provided in the following paragraph . . .)." Only the "following paragraph," fixing 281,250 gallons as the guaranteed minimum creates the ambiguity, and there was substantial extrinsic evidence tending to show that the ambiguity was introduced by the lessee and that lessor did not understand or agree that the alteration was to have any effect other than to limit accruals to the "retained fund."

■ The trial court may reject particular words from a contract if necessary to carry out the intention of the contract. (Civ. Code, § 1653; *Harris* v. *Klure* (1962) 205 Cal. App.2d 574, 578 [23 Cal.Rptr. 313].) ■ Thus the trial court was justified in rejecting language of the lease fixing 281,250 gallons as the guaranteed minimum. ■ Moreover, the court was entitled under Civil Code, section 1654 to interpret ambiguous language against the party who caused the uncertainty to exist. (*County of Alameda* v. *Southern Pac. Co.* (1961) 55 Cal.2d 479, 488 [11 Cal.Rptr. 751, 360 P.2d 327]; *B. L. Metcalf General Contractor, Inc.* v. *Earl Erne, Inc.* (1963) 212 Cal.App.2d 689, 695 [28 Cal.Rptr. 382].) We conclude that the construction arrived at by the trial court must be upheld.

■ Lessee next contends that attorneys' fees should not have been allowed. Paragraph 15 of the lease provides that "In case suit shall be brought for any unlawful detainer of the leased premises, for the recovery of any rent due under the provisions of this lease, or because of the breach of any other covenant herein contained, on the part of Lessee to be kept or performed, Lessee shall pay to Lessor a reasonable attorneys' fees which shall be fixed by the Court." The complaint specifically pleaded this provision of the lease and requested attorneys' fees, and lessor's motion for $2,500 in attorneys' fees was granted.

Lessee contends that as part of the consideration for the stipulated judgment which eliminated all issues but the computation of rent, lessor waived the right to recover attorneys' fees. This waiver assertedly resulted from an "explicit understanding between counsel for Lessor and Lessee. . . ." But the record shows that nowhere during the course of the

lengthy stipulation entered into in open court were attorneys' fees mentioned. Although lessee's theory is that attorneys' fees were no longer in issue, the trial court's memorandum of decision, findings, and judgment, stated that the court reserved jurisdiction over the matter of fixing an amount for reasonable attorneys' fees.

It was unnecessary for the lessor to introduce evidence at the trial on the issue of attorneys' fees, since the trial judge is familiar with the value of an attorney's services. (*Frank* v. *Frank* (1963) 213 Cal.App.2d 135, 137 [28 Cal.Rptr. 687].) In any event evidence on the issue of attorneys' fees was introduced during the hearing on lessor's motion for attorneys' fees after the court had expressly reserved judgment upon the specific issue of attorneys' fees. (*Gonzales* v. *International Assn. of Machinists* (1963) 213 Cal.App.2d 817, 820-821 [29 Cal.Rptr. 190].)

Lessee also contends that for the same reason the court below denied interest to the lessor, attorneys' fees should have been denied. That reason was that it would be inequitable to award interest where the dispute concerning rent was related to various other disputes. Lessee cites *Bullock's, Inc.* v. *Security-First Nat. Bank* (1958) 160 Cal.App.2d 277 [325 P.2d 185], as a case where attorneys' fees were not awarded in a similar situation. The lease in *Bullock's*, however, contained a provision that the lessees would pay reasonable attorneys' fees if the lessors, without fault on their part, became involved in litigation arising out of the lessees' use of the leased premises. Attorneys' fees were denied because the disagreement arose over the terms of the lease itself: the parties were equally at fault and the attorneys' fees provision in the lease was therefore inapplicable. (160 Cal.App.2d at pp. 288-289.)

The applicable rule in the present case is that the appellate court will not disturb an award of attorneys' fees in the absence of a manifest abuse of discretion. (*Fidelity & Deposit Co.* v. *Whitson* (1962) 205 Cal.App.2d 713, 716 [23 Cal.Rptr. 491], cert. den. 371 U.S. 953 [9 L.Ed.2d 500, 83 S.Ct. 507].) Here lessee points to no abuse of discretion, and none appears from the record.

Finally, lessee contends that the court below could not segregate legal services rendered on the present case from those rendered in the other actions involved in the stipulated judgment. But lessor's attorney specifically limited his request for fees to matters directly relating to the present

action. There is nothing to show that the trial court abused its discretion by including in the award the cost of legal services relating to matters other than the lease.

Lessee asserts a contractual provision for attorneys' fees does not cover attorneys' fees on appeal. That position is untenable. (*Wilson* v. *Wilson* (1960) 54 Cal.2d 264, 272 [5 Cal.Rptr. 317, 352 P.2d 725]; *Genis* v. *Krasne* (1956) 47 Cal.2d 241, 248 [302 P.2d 289].) Either this court may fix the reasonable amount of attorneys' fees on appeal (*Wilson* v. *Wilson, supra,* at p. 272; *Cirimele* v. *Shinazy* (1955) 134 Cal. App.2d 50, 52 [285 P.2d 311, 52 A.L.R.2d 860]), or such fees may be determined by the trial court when it determines costs. (Code Civ. Proc., § 1034; *Genis* v. *Krasne, supra,* at p. 248.) The latter procedure is to be preferred in this case.

In lessor's cross-appeal the first contention is that the court erred in failing to award interest on the judgment for rent from the due dates. Civil Code, section 3287 provides:

''Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.''

This provision is generally applicable in actions for the recovery of rent. Nevertheless, citing *McCowen* v. *Pew,* 18 Cal.App. 482 [123 P. 354], *Leonard* v. *Huston,* 122 Cal.App. 2d 541 [265 P.2d 566], and *Anderson* v. *Anderson,* 129 Cal. App.2d 403 [276 P.2d 862], the court refused to award interest because ''Under all the circumstances it would not be fair, just or equitable. . . .'' The circumstances referred to were the pendency of related actions in which third party claims were asserted as to both the ownership of the leased premises and the rent accruing under the lease. But the cases relied upon by the trial court are all equitable actions, in which the allowance of interest is a matter to be governed by the discretion of the trial court. In an action at law based on a contractual obligation, if the requirements of Civil Code, section 3287 are met, the plaintiff is entitled to an award of interest as a matter of right. (*Goodspeed* v. *Great Western Power Co.* (1939) 33 Cal.App.2d 245, 271 [91 P.2d 623, 92 P.2d 410]; cf. Civ. Code, § 3288; *Nathanson* v. *Murphy* (1957) 147 Cal.App.2d 462, 467 [305 P.2d 710].)

An action to recover rent is an action at law. (*Blackman* v. *Dalton's etc. Loans, Ltd.* (1942) 51 Cal.App.2d 14, 18

[124 P.2d 123].) ▬ ¨And when a lease provides for rent in a certain amount, interest is to be allowed thereon from the due date. (*Chambers* v. *Security Coml. & Sav. Bank* (1920) 46 Cal.App. 32, 33 [188 P. 818].) ▬ The existence of a bona fide dispute between the parties as to the amount owing under an express contract does not render that sum ''unliquidated.'' (*Ansco Constr. Co.* v. *Ocean View Estates, Inc.* (1959) 169 Cal.App.2d 235, 238 [337 P.2d 146].) Here the uncertainty that gave rise to this litigation was not as to any events which took place after the lease was entered into. Once the court determined, by reference to extrinsic evidence, what the parties intended by the ambiguous language of the instrument, the ascertainment of damages was purely a matter of calculation.

▬ The existence of third party claims affords no evidence to support any implied finding that the lessee was prevented from paying the debt either by law or by act of the lessor. Lessee could have avoided paying interest by depositing in court the full amount of the rent due and interpleading all the claimants. (*Conner* v. *Bank of Bakersfield* (1920) 183 Cal. 199, 205 [190 P. 801]; *Rogers* v. *Springfield Fire etc. Ins. Co.* (1928) 92 Cal.App. 537 [268 P. 679]; *Bank of China* v. *Wells Fargo Bank & Union Trust Co.* (9th Cir. 1953) 209 F.2d 467, 480 [48 A.L.R.2d 172].) We conclude that interest should have been allowed.

Lessor's final contention is that the court should have included in the award of costs expenses sustained by him in obtaining an audit of lessee's accounts in preparation for trial. The court did order, before the trial, that lessee cooperate in the audit desired by lessor by making its records available; but the order recited that the audit was ''to be made at the sole expense of the said party Ida Brodsky.''

▬ Although there is no statutory definition of ''costs'' in California (see Code Civ. Proc., §§ 1032-1033), the term has been held to encompass fees and charges required by law to be paid to the courts or their officers, or amounts specifically fixed by law as recoverable. (*Escrow Guar. Co.* v. *Savage* (1963) 213 Cal.App.2d 595, 597 [28 Cal.Rptr. 889].) ▬ The fees of experts employed by one of the parties are normally not allowable as costs. (*ABC Egg Ranch, Inc.* v. *Abdelnour* (1963) 223 Cal.App.2d 12, 19 [35 Cal.Rptr. 487].) Code of Civil Procedure, section 1871 does provide that the court may appoint an expert to investigate, prepare reports, and testify, if it appears that expert evidence is required. In

162

that event, the court fixes the expert's fee, which is first apportioned, and thereafter taxed as costs. ▄▄▄ The fee of an accountant, appointed under section 1871, is a recoverable cost. (*ABC Egg Ranch, Inc. v. Abdelnour, supra.*) ▄▄▄ But where, as here, an accountant is not appointed by the court but is employed by one of the parties, "the temptation to act in the interest of such party must be apparent" and "the court should not require the opposite party to pay for the services thus rendered." (*Faulkner* v. *Hendy* (1889) 79 Cal. 265, 266 [21 P. 754].) The order here neither appointed an accountant nor attempted to fix fees for his services.

The judgment as amended by the order entered May 3, 1966 is modified to allow interest on the rent from the due date until the date of entry of judgment. As so modified, the judgment is affirmed. The trial court will compute and allow the amount of interest due and fix an award of attorneys' fees on appeal. Lessor will recover his costs on appeal.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied January 18, 1968.