Filed 1/19/17; pub. order 2/16/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SOUTHERN CALIFORNIA SUNBELT DEVELOPERS, INC., <br><br> Defendant and Appellant, <br><br> v. <br><br> BANYAN LIMITED PARTNERSHIP et al., <br><br> Plaintiffs and Respondents. | G051260 <br><br> (Super. Ct. No. 764271) <br><br> O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Thierry Patrick Colaw, Judge.  Affirmed in part, reversed in part, and remanded.

Enterprise Counsel Group, Benjamin P. Pugh and James S. Azadian for Defendant and Appellant.

Law Offices of Jonathan P. Chodos and Jonathan P. Chodos for Plaintiffs and Respondents.

This is the seventh appeal to arise out of a highly complex 20-plus year multi-phase litigation. This time the issue to be decided is whether the trial court had authority to award approximately $281,000 in receivership fees to one of the prevailing parties under Code of Civil Procedure section 1033.5, subdivision (c).[1] The trial court denied the cost request on the grounds the matter was previously decided when the court terminated the receivership and approved the receiver's final accounting. We conclude the court retained authority to exercise its discretion and consider whether the receivership fee should be paid by one party or shared between the parties. Therefore, we reverse the order granting the motion to tax costs and remand the matter to permit the court to exercise its discretion on this limited issue. In all other respects, the trial court's postjudgment order is affirmed.

I

Although the issue on appeal focuses on the court's postjudgment cost award, it is helpful to briefly review the procedural background and prior appeals to better understand the relationships between the parties, the outcome of the various trial phases, and the multifaceted prevailing party determinations.

A. *General Procedural Background*

The original complaint, filed in 1996, arises out of business dealings between Dan W. Baer and an attorney, David H. Tedder, during the late 1980's and early 1990's. It began as an action filed by Tedder as general partner of a multitude of Nevada limited partnerships he created for clients as part of "asset protection" services he provided for those clients. Tedder sued on behalf of the limited partnerships to recover on loans they allegedly made to Baer's corporations, IBT International, Inc. (IBT) and Southern California Sunbelt Developers, Inc. (SCSD), to acquire real estate owned by the corporations, but in which Tedder claimed he and Baer were to be partners. The parties

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

cross-complained against each other seeking to determine their respective interests in the real estate and their other business pursuits, which included Tedder's law firm from which the two men had agreed to equally split the profits. The action ended up as one asserting that Baer, as a non-lawyer partner in Tedder's law firm, was liable for Tedder's breaches of fiduciary duties to the three law firm clients who funded the limited partnerships, and who claimed they had each lost millions of dollars entrusted to Tedder as a result of Tedder making self-interested loans of their money.[2]

The action was tried in four separate phases (hereafter referred to as Phases 1, 2, 3, and 4) before different judges in the superior court. It has already been the subject of two writ petitions[3] and six prior appeals in this court (*Castlerock Limited Partnership et al. v. Baer et al.* (Dec. 12, 2001, G026308) [nonpub. opn.] [affirming dismissal of multiple plaintiffs lacking capacity to sue]; *Banyan Limited Partnership et al. v. Baer et al.* (Feb. 7, 2007, G036089) [nonpub. opn.] [affirming appointment of a receiver]; *Banyan Limited Partnership et al. v. Baer et al.* (Aug. 12, 2013, G045584) [nonpub. opn.] (*Banyan 1*) [affirming the final judgment]; *Banyan Limited Partnership et al. v. Baer et al.* (Aug. 12, 2013, G045797) [nonpub. opn.] (*Banyan 2*) [reversing postjudgment order for new trial on alter ego claims]; *Banyan Limited Partnership et al. v. Baer et al.* (Aug. 12, 2013, G046428) [nonpub. opn.] (*Banyan 3*) [affirming

---

[2] Although there were 19 named plaintiffs in the original complaint, by the end only seven (related to the three clients) remained and three are the appellants here. They include: Thomas H. Casey, Chapter 7 trustee for Banyan Limited Partnership (Banyan), Pear Tree Limited Partnership (Pear Tree), and Orange Blossom Limited Partnership (Orange Blossom). These limited partnerships were formed on behalf of Don Grammer and his family, and we collectively refer to these entities as the Grammer Limited Partnerships unless the context indicates otherwise.

[3] *Banyan Limited Partnership et al. v. Superior Court* (Dec. 29, 2011, G046154) [nonpub. order]; *Baer v. Superior Court* (Apr. 3, 2006, G036616) [nonpub. order].

postjudgment order denying both sides attorney fees related to the second phase of trial]); *Banyan Limited Partnership et al. v. Baer et al.* (August 17, 2016, G051282) [nonpub. opn.] (*Banyan 4*) [affirming postjudgment order denying part of Grammer Limited Partnerships' motion to strike or tax costs]),[4] not to mention the plethora of lawsuits throughout the nation in state courts and federal courts involving many of the entities and individuals connected to this action.

After trial of Phases 1 and 2, the trial court ruled IBT and SCSD were responsible for several loans made by the Grammer Limited Partnerships. Following Phase 2, the trial court determined Tedder had no interest in any of the real estate owned by IBT or SCSD, and although Tedder and Baer were partners in Tedder's law firm, neither could recover anything from the other. And in the final phase, the court found the breach of fiduciary duty cause of action against Baer was time barred and the Grammer Limited Partnerships failed to prove Baer breached any fiduciary duties towards them. The court also determined the Grammer Limited Partnerships has abandoned all claims that Baer was an alter ego of his corporations (IBT and SCSD) by failing to present any evidence on the issue.

Thus, the final judgment, affirmed in our *Banyan I* opinion was against the corporations owned by Baer (IBT and SCSD) on the breach of contract cause of action tried in Phase 2 of the litigation and awarded the Grammer Limited Partnerships approximately $1.1 million on five promissory notes signed by Baer on behalf of the corporations. (*Banyan 1, supra,* G045584.) The judgment was otherwise in favor of Baer, IBT, and SCSD, and against the Grammer Limited Partnerships and other plaintiffs (the non-Grammer plaintiffs), on all other causes of action and claims in the complaint.

---

[4] On the court's own motion, we take judicial notice of our unpublished opinions in these cases. (Evid. Code, § 452, subd. (d); Cal. Rules of Court, rule 8.1115(b)(1).)

4

In the *Banyan 2* opinion we confirmed waiver of the alter ego claim by reversing the trial court's decision to revive the issue via a new trial order. (*Banyan 2, supra,* G045797.) In the *Banyan 3* opinion we considered and affirmed the order denying the motions for attorney fees filed by both parties. (*Banyan 3, supra,* G046428.) In the *Banyan 4* opinion we affirmed the trial court's ruling denying part of the Grammer Limited Partnerships' motion to strike or tax costs. (*Banyan 4, supra,* G051282.) Simply stated, we held the trial court correctly determined certain parties on both sides of this multi-phase litigation were prevailing parties entitled to costs. The Grammer Limited Partnerships (Banyan, Orange Blossom & Pear Tree) could recover costs as the prevailing party against IBT on two causes of action. Pear Tree alone could recover costs as the prevailing party against SCSD. (*Ibid.*) As for the defendants, Baer having conclusively defeated the alter ego allegations, was the prevailing party against all claims made by Grammer Limited Partnerships and non-Grammer plaintiffs. (*Ibid.*) SCSD was awarded some of the costs it requested, having successfully defended itself against Banyan and Orange Blossom's claims as well as the non-Grammer plaintiffs. (*Ibid.*)

We adopt and incorporate by reference the facts and analysis from our opinions in *Banyan 1, supra*, G045584, *Banyan 2, supra,* G045797, *Banyan 3, supra,* G046428, and *Banyan 4, supra,* G051282, and will not repeat them.

B. *The Motion to Strike or Tax Costs*

Both sides filed cost memorandum. Relevant to this appeal, SCSD sought $322,014.18 against Banyan and Orange Blossom (but not Pear Tree). This amount included $281,264.94 in receivership fees.

The Grammer Limited Partnerships and non-Grammer plaintiffs filed a joint motion to tax costs sought by Baer, IBT, and SCSD. With respect to the receiver fees, they objected on four grounds. First, they maintained SCSD could not recover receivership costs against the non-Grammer plaintiffs because they did not seek the receiver's appointment. They reminded the court that Tedder sought the appointment,

5

and only the Grammer Limited Partnerships joined in the motion because they feared the assets "would otherwise be dissipated pending litigation."

Second, the Grammer Limited Partnerships argued res judicta precluded litigation of this issue. They explained that in 2005 Judge Kim Dunning created the receivership and ordered the assets held by IBT, and SCSD would pay the receiver's expenses. After Phase 3 completed, the court ruled Tedder had no interest in IBT's and SCSD's real estate, Baer petitioned for termination of the receivership. The trial court granted the motion and after the receiver submitted his final accounting, the court ordered his fees be paid from the receivership estate. The Grammer Limited Partnerships argued Baer had 10 days to object to the accounting and request reallocation of the costs. Baer did not do so, and therefore, Trial Judge Thierry P. Colaw's approval of the final accounting and discharge of the receiver precluded any later attempts to reallocate payment of those costs. The Grammer Limited Partnerships maintained the final accounting was a separately appealable order on a collateral matter to the litigation. (Citing *Fish v. Fish* (1932) 216 Cal.14, 16.) The Grammer Limited Partnerships concluded the trial court lacked jurisdiction to modify the discharge order.

Third, the Grammer Limited Partnerships argued receivership costs were not recoverable as a prevailing party costs under section 1032 or 1033.5. And fourth, they argued Baer persuaded the court to terminate the receivership on the grounds the receiver was appointed to benefit only Tedder and not the Grammer Limited Partnerships. They noted the Grammer Limited Partnerships opposed ending the receivership, arguing the receiver was appointed to protect their creditor claims as well. They recalled the court disagreed and ruled the Grammer Limited Partnerships had no protectable property interest in the receivership estate. They concluded judicial estoppel barred Baer and SCSD from now claiming the Grammer Limited Partnerships benefitted from the receivership.

In its opposition, SCSD clarified it was not asking to allocate the receiver's costs against the non-Grammer plaintiffs (thus rendering the first argument in the motion to tax moot). Regarding the res judicata argument, SCSD argued the cases cited were inapplicable and there was no legal authority holding a trial court lacks jurisdiction to allocate the costs of a court-appointed receiver at the end of trial. SCSD argued it would be inequitable to hold a party liable for receivership costs paid over that party's objection. They also asserted it was "disingenuous" for the Grammer Limited Partnerships to now assert they had no responsibility for the receivership. It was undisputed the Grammer Limited Partnerships and Tedder convinced the court the receivership was necessary to protect their asserted interests. After Banyan and Orange Blossom lost their claims, SCSD promptly paid Pear Tree the $70,000 owed, demonstrating a receiver as not needed for Pear Tree's protection. SCSD asked the court to award the receivership costs against Banyan and Orange Blossom jointly and severally.

Judge Colaw held a hearing on the respective motions to strike or tax costs and took the matter under submission. Relevant to this appeal, he granted the Grammer Limited Partnerships' motion to strike the requested receivership costs. He gave two reasons, as follows: "(1) since the court determined the receiver fee in question in this court's February 8, 2008 [o]rder approving and settling the [r]eceiver's final report (noting that plaintiffs were afforded the opportunity to object, at that time); and (2) the parties do not dispute that the McGrath plaintiffs . . . were never a party to the [r]eceivership request or activity . . . ."[5]

Because the first reason is a jurisdictional issue, it is helpful to first consider a brief factual summary of the procedural history leading up to the prior rulings regarding the receivership in 2005 and 2008.

_____

[5] As mentioned earlier, our opinion in *Banyan 4, supra,* G051282, affirmed the court's ruling denying part of the Grammer Limited Partnerships' motion to strike and awarding costs to SCSD and Baer.

## C. Procedural History of Receivership

In 2005, after Phase 2 concluded, Tedder and the Grammer Limited Partnerships convinced the trial court it was necessary to appoint a receiver to take possession and control of two real property assets owned by Baer's entities, IBT, and SCSD. The first asset was real property owned by IBT and was called the Black Oaks Ranch (the Ranch). The second asset, owned by SCSD, was an office condominium complex called the John Wayne Executive Guild (the Guild).

In its order, the court referred to these properties as being part of the "Joint Venture" between Baer and Tedder. It explained, "The court is aware of unresolved issues concerning SCSD's role, if any, in the ownership of one or more of the above-described assets. For purposes of this order, the above-described assets are considered assets of the Joint Venture." It appointed receiver, David J. Pasternak, who was required to file monthly reports with the court.

The appointment order, filed on August 16, 2005, stated, "The court finds appointment of a [r]eceiver is 'necessary to preserve the property or rights of' . . . Tedder and . . . Grammer [Limited] [P]artnerships. [Citations.] [¶] . . . Although this litigation commenced in May 1996, there is not currently a date for the next phase of trial and the parties have been unable to agree on basic business decisions affecting Joint Venture property." In addition, the court reasoned appointment of a receiver was necessary because the case was extremely complex and involved accounting records going back over 18 years. It had already been determined the Grammer Limited Partnerships were going to be awarded a judgment in excess of $1 million, and there were other unresolved creditor claims against the Joint Venture. Without appointment of a neutral receiver, the Joint Venture's assets could be "dissipated or lost" due to the exclusion of one or more of the parties from management. Finally, "There [were] unresolved issues concerning the accounting and equitable distribution of Joint Venture proceeds and profits."

8

In October 2005, the court issued a supplemental nunc pro tunc receivership order. The court's order included more details about the assets to be included in the receivership. It also discussed how the receiver would be paid. For example, the order provided the receiver could charge "as interim fees" his standard hourly billing rate of $440, and he could employ accountants and consultants needed in connection with administering his duties. The court ordered the receiver to prepare monthly statements reflecting his fees and administrative expenses. After serving the statement, the receiver was authorized to pay himself and the expenses "from estate funds." In addition, "Notwithstanding periodic payment of fees and expenses, all fees and expenses shall be submitted to the [c]ourt for its approval and confirmation, in the form of either a properly noticed interim request for fees, a stipulation of all parties, or in the Receiver's Final Account and Report."

IBT and SCSD appealed the order appointing a receiver. The trial court set a bond amount of $9 million to stay the appointment until the appeal was heard. This court summarily denied the writ petition challenging the high bond amount and we later affirmed the receivership order. (*Banyan Limited Partnership et al. v. Superior Court, supra,* G046154 [nonpub. order]; *Banyan Limited Partnership et al. v. Baer et al., supra,* G036089 [affirming appointment of a receiver].)

The case proceeded to Phase 3, where it was eventually determined the partnership was illegal and the receivership estate belonged exclusively to IBT and SCSD (the Ranch and Guild, respectively). Meanwhile, during the two year duration of the receivership, Pasternack incurred charges exceeding $323,000. He also stopped distributing the Guild's income to SCSD.

In January 2007, Baer, IBT, and SCSD moved to terminate the receivership. They argued it was no longer necessary to have a receiver manage the assets of the alleged partnership that has been deemed illegal and did not own those assets. They argued, "Although . . . Pasternak's fees and all other expenses associated

9

with the [r]eceivership are chargeable to Tedder as litigation costs recoverable by Baer pursuant to . . . section 1032 . . . Tedder is . . . judgment proof . . . [and] Baer, through SCSD and IBT, will end up paying the entire cost of the [r]eceivership . . . ." In conclusion, they noted "with each passing day" Baer continues to "incur unnecessary charges associated with [r]eceivership fees and professed expenses" and is also "denied access to the operating revenue" generated by the Guild. They requested the court remove the receiver, order him to return the receivership estate assets to their rightful owners, and order the receiver to issue a final accounting.

In their opposition, Tedder and the Grammer Limited Partnerships reminded the court that it imposed the receivership on behalf of both parties and to "prevent continued waste of the assets." The Grammer Limited Partnerships argued they had been awarded "[$2 million]" in Phase 2 of trial and the receiver was in place "to protect their recovery" of the judgment.

In February 2007 the court partially granted the motion. It terminated the receivership with respect to the Guild and Ranch. It ordered the receiver to turn over possession and control of the Guild to SCSD, and of the Ranch to IBT. The court held the receivership intact for the limited purpose of holding approximately $75,000 to pay the outstanding receivership obligations and $675,000 in investment accounts until further order of the court. The court explained the case was not finished and there were "multiple conflicting claims as to who owes what to whom." The court asked the receiver to prepare an interim accounting, but to wait for further orders before preparing a final accounting. The court requested that Baer prepare a final order, which the court signed and filed in April 2007.

At the end of May, the receiver filed an interim report requesting the approval of fees and costs incurred through April 30, 2007, that had already paid out of the receivership estate. The court approved fees and costs totaling $261,787.92.

In early June 2007, Baer, IDC, and SCDC filed a motion to terminate the remaining portion of the receivership and replace it with the more cost effective alternative of an undertaking. They complained that after the court instructed the receiver in April to "'stand down,'" the receiver charged $5,448.99 for his services that month. They suggested that it would be less expensive to deposit the $750,000 cash currently being held in receivership with the court, and stop paying the receiver to simply watch the money.

The court agreed and terminated the receivership on the condition SCSD deposit an undertaking of $750,000. It also placed restrictions of IBT's ability to sell or encumber the Ranch. The court ordered the receiver to file his final report within 60 days.

Soon thereafter, the receiver prepared his final accounting. SCSD and IBT filed objections to portions of the receiver's proposed order that authorized the receiver to destroy all files and records without shredding them and gave him indemnification provisions. After holding a hearing, the court issued a final order on February 8, 2008. It approved the final report and accounting, authorizing the additional payment of $19,477 from the receivership estate. The receiver was ordered to pay the balance of funds to Baer. The court declared, "This [c]ourt retains jurisdiction over any matters or claims which may arise concerning this receivership[.]"

DISCUSSION

A. *General Powers, Duties, and Compensation of Receivers*

"A receiver is an agent and officer of the court, and is under the control and supervision of the court. (. . . § 568; Cal. Rules of Court, rule 3.1179.)" (*City of Chula Vista v. Gutierrez* (2012) 207 Cal.App.4th 681, 685 (*City of Chula Vista*).) "The receiver is an agent of the court and not of any party, and as such: (1) Is neutral; [¶] (2) Acts for the benefit of all who may have an interest in the receivership property; and [¶] (3) Holds assets for the court and not for [any party]." (Cal. Rules of Court, rule 3.1179(a); *Lesser*

11

*& Son v. Seymour* (1950) 35 Cal.2d 494, 499.)  The receiver is obligated to preserve and manage the property during the course of the receivership.  (*Title Ins. & Trust Co. v. Calif. Development Co.* (1911) 159 Cal. 484, 492.)

"Receivers are entitled to compensation for their own services and the services performed by their attorneys.  [Citation.]  Generally, the costs of a receivership are paid from the property in the receivership estate.  [Citations.]  However, courts may also impose the receiver costs on a party who sought the appointment of the receiver or "'apportion them among the parties, depending upon circumstances.'"  (*Baldwin v. Baldwin* (1947) 82 Cal.App.2d 851, 856.)  Courts are vested with broad discretion in determining who is to pay the expenses of a receivership, and the court's determination must be upheld in the absence of a clear showing of an abuse of discretion.  [Citations.]"  (*City of Chula Vista, supra,* 207 Cal.App.4th at pp. 685-686.)

Moreover, "The amount of fees awarded to a receiver is 'in the sound discretion of the trial court and in the absence of a clear showing of an abuse of discretion, a reviewing court is not justified in setting aside an order fixing fees.' [Citation.]"  (*Melikian v. Aquila, Ltd.* (1998) 63 Cal.App.4th 1364, 1368.)  A receiver, as any fiduciary, may be surcharged and his or her surety held liable for a failure to properly carry out the duties imposed by the order of appointment.  (*Stewart v. State of California* (1969) 272 Cal.App.2d 345, 351.)

However, in this case the trial court's ruling was based on its determination it lacked jurisdiction to consider allocating the receiver fee as a cost to the prevailing party.  In other words, it did not exercise its discretion, believing it had none.  The question of whether the court had authority to consider and reallocate the burden of paying the receiver's fee is a jurisdictional issue, and a pure legal one, requiring de novo review.

12

## B. *Res Judicata and Collateral Estoppel Doctrines*

"'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action. [¶] A clear and predictable res judicata doctrine promotes judicial economy. Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. "'Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."' [Citation.] A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.' [Citation.]" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896-897, fn. omitted.)

This case does not concern relitigation of the same issue in two lawsuits. The issue we must decide is whether the court's prior rulings concerning the receivership midway through a lawsuit, precluded it from considering whether to reapportion the receiver's fees to one or more parties at the end of the litigation. In short, the question is whether collateral estoppel precluded the court from considering the receivership fee obligation at the end of the lawsuit.

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue

13

must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citation.]" (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. omitted (*Lucido*).)

The Grammer Limited Partnerships assert the trial court correctly held SCSD's failure to appeal the order approving the receiver's final accounting precluded later litigation of the issue. They make the following argument: "[V]ery substantial trial court and appellate time had been devoted to resolving the legitimacy of the appointment, its scope, its cost, its burden and who should pay for it. Consequently by the time the receiver's report was finalized in 2008, the trial court was perfectly correct in concluding that if SCSD had anything left to contest, it was incumbent upon SCSD to do so at that juncture, or acquiesce in the trial court's ruling." (Fn. omitted.) They point to the undisputed evidence SCSD vigorously opposed the receiver's appointment and sought writ and appellate review of these orders. In addition, there was "a new round of ex parte applications and hearings regarding the lifting of the receivership and the approval of his final report occurred, demonstrating that the entire issue of the appointment of the receiver, his fees[,] and their allocation, was fully litigated before several judges and this [c]ourt."

This argument does not satisfy the threshold requirements for application of the collateral estoppel rule. As noted by the Grammer Limited Partnerships, there are actually two previous rulings regarding the receivership. First, was the appointment authorizing payment from the receivership estate. Second, was the termination and final accounting, also authorizing payment of receivership fees from the estate. As we will explain, neither ruling concerned the litigation of, or a final determination of, the party or parties ultimately responsible for the receivership fees.

14

While it is true SCSD vehemently opposed the receiver's appointment and sought appellate review of this order, the record contains no evidence suggesting the issue of who was ultimately responsible to pay the receivership fees was necessarily decided as part of the appointment. The record shows SCSD's objection at trial related to *the need for* a receivership. The sole issue decided on appeal was whether the trial court abused its discretion *by appointing* the receiver pursuant to section 564. (*Banyan Limited Partnership et al. v. Baer et al., supra,* G036089.) The writ proceeding also did not challenge the question of who was to pay the receivership fees, but rather this court summarily denied the writ petition challenging the high bond amount set by the trial court as an alternative to receivership. (*Banyan Limited Partnership et al. v. Superior Court, supra,* G046154 [nonpub. order].)

We conclude it would have been inappropriate for SCSD to have raised any other type of challenge to the appointment order. A receivership is designed to be merely a provisional remedy. It preserves the status quo of property while litigation is pending. "[T]he 'appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the action.' [Citations.]" (*Canada Life Assur. Co. v. LaPeter* (9th Cir. 2009) 563 F.3d 837, 843.)

Because the receivership was not intended to serve as a remedy to any of the causes of action underlying the case, the court was not required to decide at the time of appointment whether there existed reasons to shift the burden of paying the receiver's fees to one or more parties. The order designated a source of payment simply to insure the court-appointed receiver would receive compensation. This interim order served the purpose of the provisional remedy, i.e., to merely preserve the status quo.

As noted in our prior opinion, "[G]iven the evidence of the intractable dispute between Baer and Tedder, and the various creditors of the Joint Venture (including the Grammer Partnerships), the trial court had little choice but to appoint a receiver to protect their interests. The Joint Venture has been 'winding down' since this

15

litigation was filed some 11 years ago. In that time, Baer has been in complete control of the Joint Venture's remaining assets: IBT, the Guild, and the Ranch. He has had full access to the income from the Guild to fund the litigation. He has been able to control IBT's position in the litigation to the possible detriment of Tedder, who allegedly has a one-half interest in IBT." (*Banyan Limited Partnership et al. v. Baer et al., supra,* G036089.) Moreover, having just completed Phase 2 of the lawsuit, there was no clear prevailing party. "Were this nascent litigation, the trial court might well have concluded the circumstances did not yet warrant appointment of a receiver. But at now some 11 years old, the court could reasonably find appointment of a neutral receiver to take over the assets of the Joint Venture was necessary to protect the assets from dissipation, and to ensure an equitable accounting and distribution of the assets and profits." (*Ibid.*)

Thus, at the time of the appointment, the trial court reasonably assumed there were assets that required protection for the benefit of both plaintiffs and defendants pending the final judgment in this highly complex case. Arranging for the receiver's compensation was an appropriate interim order. Contrary to the Grammer Limited Partnerships' contention, the order appointing the receiver was not an adjudicated or final determination of who was ultimately responsible for the fees.

The same holds true for the court's second ruling in 2007 regarding termination of the receiver and its approval of the final accounting. Simply stated, the litigation had progressed to a point where the provisional remedy was no longer needed. The court found a less drastic and more economical way to protect the remaining assets at issue ($750,000) until the case finished. In its order, the court expressly stated continued protection was desired because there remained conflicting claims to the money. As it turned out, the court was right and the litigation did not end for another seven years (Phase 4 concluded in October 2010). The final judgment was not entered until 2011, and appeals arising from the judgment were completed in 2013. Thus, the court considered the issue of prevailing parties and the costs of litigation in 2014, seven years

16

after the receivership was terminated.  The provisional remedy of a receivership was only required for approximately two years of the 20-year litigation.

The Grammer Limited Partnerships assert the party obligated to pay for the receiver was decided as part of the final accounting in 2007.  Noticeably missing is any legal authority to support this contention.  The cases we have reviewed suggest the final accounting represents a definitive determination only as to the matters presented therein.  Before the court rules on the final accounting, the parties may question, and the court must consider, issues such as whether the receiver exceed his or her authority, caused injury to others, or acted negligently in operating the receivership estate.  "[U]pon the receiver's final report and account, the receiver in his personal capacity may be surcharged for losses to the receivership estate based upon his misconduct or mismanagement."  (*Aviation Brake Systems, Ltd. v. Voorhis* (1982) 133 Cal.App.3d 230, 235 (*Aviation Brake Systems*).)  "It is of course an indispensable part of the receiver's duties to file an accounting and submit himself [or herself] to inquiry and attack by those beneficially interested in the estate."  (*Macmorris Sales Corp. v. Kozak* (1967) 249 Cal.App.2d 998, 1005.)

The court may hold a receiver personally liable for neglect, misconduct, or mismanagement of receivership estate.  And because all issues concerning the receiver's actions are fully adjudicated as part of the final accounting, it is well settled the discharge order operates as res judicata as to any claims of *liability against the receiver* in his or her official capacity.  (*Aviation Brake Systems, supra,* 133 Cal.App.3d at p. 234.)  A party cannot file an independent action to address the receiver's liability in mismanaging the assets.  (*Ibid.* ["matters sought to be litigated in the [independent] action were, could have been, or should have been litigated at the time the receiver's final report and account was approved"].)  Instead, a party must immediately appeal from the order approving the final accounting because issues with the receiver concern matters collateral to the underlying lawsuit.  (*Macmorris Sales Corp. v. Kozak* (1967) 249 Cal.App.2d 998, 1002 [final

17

accounting order appealable as final judgment "determining matters which are collateral to the main case"].)  In summary, the last chance to challenge the receiver's actions, management, and omissions is at the time of the final accounting because the provisional receivership remedy is collateral to the main case.

We found no authority holding the final accounting is also the final time the parties can question who is ultimately responsible for the court-appointed receiver's fees. This issue would not be an integral part of the receiver's final accounting.  There are many factors a trial court should consider when determining whether the obligation to pay for the receivership should be the estate or be shifted to one or more of the parties. (See 2 Clark on Receivers (3rd ed. 1959), § 637.1, subds. (a)-(r), pp. 1055-1068, fns. omitted (hereafter Clark).)  This determination is based on factors unrelated to the court's approval of the receiver's overall competency and performance, undertaken in the context of a final accounting.  Indeed, the decision often focuses on equitable circumstances presented in the underlying dispute or factors that require completion of the litigation. (*City of Chula Vista, supra,* 207 Cal.App.4th at p. 686 [relevant factor in "considering the appropriate source for the compensation" is "whether the party to be charged obtained a benefit from the receiver's services"]; *Stanton v. Pratt* (1941) 18 Cal.2d 599, 603 [when insufficient funds receiver may "look to the parties at whose instance he was appointed" or "for whose benefit the receivership was created"]; Clark, *supra*, § 637.1, subds. (b)-(r). pp. 1056-1068, fns. omitted [listing multiple exceptions to general rule fees paid from receivership estate].)  And, relevant to this appeal, the timing of the decision also may vary, being depending on the nature of the dispute and the size of the estate.

We find Clark's treatise to be very instructive.  This well respected expert on receiverships offered the following explanation for the general rule holding the receivership estate is responsible for the receiver's fees and costs:  "A receiver is an officer of the court.  He is subject to the court's control and orders and not subject to the control of the parties to the case nor of the party asking for the appointment of a receiver.

18

It therefore follows that neither the parties to the case nor the party moving for a receiver has or have any direct control over the activities of the receiver, expenses of the receivership and/or the receiver's fees and/or his counsel's fees. Persons ordinarily having no control over expenditures are not held liable for such. The court itself being an arm of the sovereignty cannot be held liable. The expenses of the receivership and the receiver's fees and those of his counsel in ordinary cases must come out of the property or funds placed in the custody of the receiver according to a rule analogous to the rule providing that a trustee's expenses and fees for services should come out of the property in the hands of the trustee." (Clark, *supra*, § 637.1, subd. (a), pp. 1055-1056, fns. omitted.)

If this was the only applicable rule, this appeal would be much simpler. The court's order creating the receivership and requiring the estate to pay the costs would be deemed a final ruling on the matter. The parties and the court would have no reason to revisit the issue of who was responsible to pay at a later date. The final accounting would concern only a review of the receiver's management and performance, claims of liability against the receiver, and consideration of whether the receiver's expenses were justified. But we cannot ignore that there are multiple exceptions to the general rule. By their nature, these exceptions directly refute the theory the trial court lacked authority to allocate receivership costs at the end of the case.

For example, a plaintiff may agree before the appointment to pay the receiver's compensation if there is some question the estate will be insufficient. (Clark, *supra*, § 637.1, subd. (b), p. 1056.) Another exception permits a court to make payment of costs and expenses a condition of the appointment. (Clark, *supra*, § 637.1, subd. (c), pp. 1056-1057, fns. omitted.) Thus, if there is a question regarding whether there would be money available to pay the receiver a "court may be justified in laying down a condition of the appointment that the plaintiff will pay the receiver's fees and all or a specific part of the costs and expenses of the receivership." (*Id.* at p. 1057, fn. omitted.)

19

Alternatively, when there are insufficient funds, "[a] number of cases may be found which hold that . . . the parties for whom the receiver acted may be compelled to pay the expenses incurred for their benefit." (Clark, *supra*, § 637.1, subd. (e), p. 1058.) In such cases, the court may determine at the end of the case that the plaintiff or defendant most benefited from the receivership and should be burdened with those costs.

Another exception provides the court may determine there are equitable circumstances warranting the defendant paying the costs and expenses of receivership rather than the receivership estate. (Clark, *supra*, § 637.2, p. 1069.) "If the defendant acquiesces in the receivership, this is an additional ground for justifying the court in charging the court costs, expenses of receivership, receiver's fees and receiver's counsel fees against the property or funds in the hands of the receiver. However, the acquiescence of the defendant in the receivership of itself does not necessarily place the costs and expenses on the defendant. [¶] Where property of a defendant is taken from his possession by the appointment of a receiver against his consent under an erroneous order which the defendant successfully resists, he is on general principles entitled to the return of the property without charge against it. In such a case charges for preserving and keeping the property may be ordered paid out of the fund in special cases but the need of such preservation must be strictly shown." (*Ibid.*, fns. omitted.)

On the other hand, the court may determine there are equitable circumstances warranting the plaintiff paying the costs and expenses of receivership rather than the receivership estate. (Clark, *supra*, § 637.1, subd. (d), p. 1057.) The Clark treatise explains the expenses of the receivership can be taken out of the property or fund "irrespective of the question as to whether or not the plaintiff in the end recovers a judgment against the defendant." (*Ibid.*) "It does not always follow that because the plaintiff or defendant fails to recover that the action of the court or the conduct of the parties has been irregular, improper, erroneous or unnecessary. [¶] Nevertheless, there are cases wherein the plaintiff seeks to have a receiver appointed over property in which

20

the defendant claims plaintiff has no interest or right whatsoever and the defendant resists plaintiff's claim from the very beginning and the costs, expenses and fees of the receivership have been occasioned by the unfounded claim and the defendant derives no benefit whatsoever from the receivership, then it would *manifestly be inequitable and unjust* to throw upon the defendant or his property the burden of the litigation instituted by the plaintiff without right or reason. And the court will adjudicate the costs, expenses and fees on equitable principles and in flagrant cases as above indicated will refuse to place the burden on the defendant's property. Under such circumstances where no malice nor wrongful purpose is shown and only a bona fide effort to preserve the property, a court will adjudge the costs, expenses and fees in such a way as to work as little hardship as possible on all concerned. Under such a situation the plaintiff has been held liable only for the actual losses sustained and not for disbursements which were beneficial to the property or fund and which would necessarily have to be made even if administered by the rightful owners." (Clark, *supra*, § 637.1, subd. (d), pp. 1057-1058, fns. omitted, italics added.)

Also relevant to this appeal is the exception that applies when it is proven "plaintiff has no interest in the subject matter of [the] suit." (Clark, *supra*, § 637.1, subd. (f), p. 1059, bold omitted.) "In case[s where] the parties procure the appointment of a receiver as mere interlopers who have no interest in the subject matter of the suit under any view, and the real owners of the property and those interested in the fund are in no way benefited by the receivership, the fees of the receiver and his expenses cannot properly be taxed against the fund. [¶] In such a case the appointing court has *power to tax the costs of the case and the expenses of the receivership against the plaintiff* or the party who has asked for the receivership. Yet even in such a case the court costs, expenses of the receivership, including the receiver's fees and the fees of his counsel, should be adjudged on equitable principles. [¶] In a case wherein there is no malice nor wrongful purpose and only an effort to conserve the property in which plaintiff believed,

21

though he did not show that he was interested, the question of liability should be considered and adjudged from the standpoint of working as little hardship as possible on all concerned. Under such a situation the plaintiff has been held liable only for the actual losses sustained and not for disbursements which were beneficial to the property or fund and which would necessarily have to be made even if administered by the rightful owners." (Clark, *supra*, § 637.1, subd. (f), p. 1059, fns. omitted, italics added; *Baldwin v. Baldwin* (1947) 82 Cal.App.2d 851, 856 (*Baldwin*) [fees must be paid by plaintiff who secured receiver based on "false and unwarranted allegations" because any other rule would "place in a plaintiff's hands a weapon which might easily result in the complete ruin of an innocent defendant"].)

To summarize, the above exceptions show trial courts have the authority to require a party, rather than the receivership estate, to pay the receiver's fee. More importantly, the timing of this decision varies depending on the circumstances of the case, refuting the suggestion it *must* be decided as part the receivership's creation or during the final accounting. It may be determined at those two junctures of the litigation or at some point after adjudication of the underlying causes of action. We found nothing in the record to support the Grammer Limited Partnerships' theory the issue was "actually litigated" and "necessarily decided" in any prior proceeding in this case. (*Lucido, supra,* 51 Cal.3d at p. 341 [requirements for application of collateral estoppel rule].) The collateral estoppel theory was inapplicable. The issue has not yet been adjudicated, and therefore, the trial court had authority to consider SCSD's request.

As a brief aside, we note the above discussion and analysis also answers an alternative argument raised by the Grammer Limited Partnerships. They assert the court's decision to tax the receivership costs was not an abuse of discretion because there was *insufficient evidence in the record* to support application of any of the exceptions to the general rule. Namely, there was no evidence (1) the court was misled by a party to appoint the receiver, (2) the appointment was improvidently granted or maintained,

22

(3) the receiver benefited the Grammer Limited Partnerships independent of the Tedder's interests, or (4) equity demanded the Grammer Limited Partnerships "share a portion" of the receiver's costs. This argument hurts rather than helps the Grammer Limited Partnerships. Clearly, the reason the record is devoid of any evidence on the above listed subjects is because the issue has yet to be adjudicated. And because the dispute was not ripe for trial court to consider at the final accounting, we would not expect to see evidence or argument in the record concerning whether the exceptions to the general rule should apply.[6]

In conclusion, we hold the trial court erroneously relied on the collateral estoppel theory in deciding it lacked authority to consider SCSD's request for reimbursement of the receivership fees. The order taxing this cost must be reversed. However, this ruling does not end our discussion because the Grammer Limited Partnerships also maintain the receiver's fees were not recoverable as a section 1032 cost. As will be described below, we conclude the court had authority to exercise its discretion under section 1033.5, subdivision (c)(4), and reallocate the receivership costs if it determined any of the equitable exceptions to the general rule applied.

D. *Recovery of Receivership Costs*

"'The "costs" of a civil action consist of the expenses of litigation, usually excluding attorney fees. Under the common law rule, parties to litigation must bear their own costs. The right to recover any of such costs is determined entirely by statute. "It is

---

[6] When the parties prepared their briefs for this appeal, our opinion had not yet been filed in *Banyan 4, supra,* G051282, rejecting the Grammer Limited Partnerships' arguments concerning the cost award and the trial court's partial denial of their motion to tax costs. Therefore, little needs to be said about the Grammer Limited Partnerships' additional arguments in the current appeal that are based on the assumption they prevailed in *Banyan 4, supra,* G051282. They lost, and as explained in our prior opinion, we have already decided SCSD may recover costs as a prevailing party (separate from IBT and Baer), and it was not too late for the court to add to the judgment a cost award.

23

axiomatic that the right to recover costs is purely statutory, and, in the absence of an authorizing statute, no costs can be recovered by either party." [Citations.]' [Citation.] [¶] 'This general rule is subject to numerous exceptions, including those found in . . . section 1032, subdivision (b), which provides that unless otherwise statutorily prohibited, the prevailing party is entitled to recover "costs." The primary statutory provision with respect to the types of expenses that may or may not be included in a cost award under . . . section 1032 is found in section 1033.5 of that code.' [Citation.]" (*Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 597 (*Baker-Hoey*).)

"'[S]ection 1033.5, enacted in 1986, codified existing case law and set forth the items of costs which may or may not be recoverable in a civil action. [Citation.]' [Citation.] An item not specifically allowable under subdivision (a) nor prohibited under subdivision (b) may nevertheless be recoverable in the discretion of the court if 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.' [Citation.]" (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 773-774.) The court's discretionary authority to award an item, not expressly listed or prohibited, is defined in section 1033.5, subdivision (c)(4). This provision provides: "Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion."

Several appellate courts have held the fees of various court-appointed assistants necessary for the conduct of civil litigation, including special masters, referees and arbitrators, constitute statutory costs that may be awarded under section 1033.5, subdivision (c)(4). (See *Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1207-1210 (*Gibson*) [private mediator]; *Winston Square Homeowner's Assn. v. Centex West, Inc.* (1989) 213 Cal.App.3d 282, 292-293 (*Winston Square*) [special master for discovery and settlement]; *ABC Egg Ranch, Inc. v. Abdelnour* (1963) 223 Cal.App.2d 12, 19 (*ABC Egg Ranch*) [accountant], abrogated on other grounds in *Weiner v. Fleischman* (1991) 54 Cal.3d 476, 485; *Most Worshipful Lodge v. Sons etc. Lodge* (1956) 140 Cal.App.2d 833,

24

834-835 [referee]; *Estrin v. Fromsky* (1942) 53 Cal.App.2d 253, 255 [accountant] (*Estrin*).)

These opinions make clear the decision to award costs for court appointed assistants is discretionary and can be denied. In this regard they are often distinguished from the category of court-appointed "experts" described under section 1033.5, subdivision (a)(8). (See *ABC Egg Ranch, supra*, 223 Cal.App.2d at p. 19; *Estrin, supra*, 53 Cal.App.2d at p. 255.) For example, in *Baker-Hoey, supra*, 111 Cal.App.4th 592, the appellate court confirmed discovery referees were not court-appointed "experts" within the meaning of section 1033.5, subdivision (a)(8). It held the trial court had the discretion to award or deny the referee's fees as costs under section 1033.5, subdivision (c)(4), so long as they were reasonable and necessary to the litigation. (*Baker-Hoey, supra*, 111 Cal.App.4th at pp. 603-606.)

We found the well-reasoned analysis of two opinions discussing cost awards for court-appointed assistants particularly instructive. (*Winston Square, supra*, 213 Cal.App.3d at p. 293; *Gibson, supra,* 49 Cal.App.4th at p. 1207.) In the *Winston Square* case, a homeowner's association (Plaintiff) sued the developer and several subcontractors. (*Winston Square, supra*, 213 Cal.App.3d at pp. 285-286.) The trial court granted, over one defendant's (Defendant) objection, Plaintiff's motion to appoint a special master to control discovery and to conduct settlement conferences. (*Id.* at p. 292.) Defendant was charged a portion of the special master's fees, but when it prevailed at trial, the court allowed Defendant to recover this cost from Plaintiff. (*Ibid.*) On appeal, the court noted special master fees do not appear on the lists of allowable costs or prohibited costs in section 1033.5, subdivisions (a) and (b). (*Winston Square, supra*, 213 Cal.App.3d at p. 293.) The parties agreed there was no case authority on this issue, and Defendant asserted the cost fell within section 1033.5, subdivision (c). Plaintiff

25

disagreed, maintaining "the Legislature did not mean entirely new 'categories' of costs would be left to the discretion of the trial court." (*Winston Square, supra*, 213 Cal.App.3d at pp. 285-286.) The court determined this argument, lacking legal support, was not persuasive. It reasoned, "A special master having been appointed by the court, his or her fee is analogous to the award of '[f]ees of expert witnesses ordered by the court.' [Citations.] The expense of court-appointed experts is first apportioned and charged to the parties, and then the prevailing party's share is allowed as an item of costs. [Citation.] [¶] The trial court acted well within the broad discretion granted to it by section 1033.5, subdivision (c)(4), when it allowed the special master fees as an item of costs." (*Ibid*.)

In the *Gibson* case, the appellate court considered defendants' contention the trial court exceeded its discretionary powers in awarding costs for mediation because these costs are not statutorily authorized and were not reasonably necessary to the conduct of the litigation. (*Gibson, supra,* 49 Cal.App.4th at p. 1207.) The appellate court disagreed, stating, "Section 1033.5, subdivision (c)(4), authorizes the trial court to exercise its discretion to award costs for items not specifically allowed nor prohibited under subdivisions (a) and (b), so long as they are 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.' [Citations.]" (*Ibid.*) It noted an award of costs for mediation expenses "is not statutorily proscribed" or specifically allowed. (*Ibid.*) "Nevertheless, defendants argue that, because the mediation statutory scheme does not expressly provide those expenses may be awarded as costs, as is the case with respect to arbitration (§ 1141.21), the Legislature must have determined such expenses cannot be awarded as costs. We do not agree. Had the Legislature intended to exclude mediation expenses from items allowable as costs, it would have been a simple matter to have listed them in section 1033.5, subdivision (b), as an item which could not be awarded. In light of the general authority to award as costs '[i]tems not mentioned in this section . . . in the court's discretion' (§ 1033.5, subd.

26

(c)(4)), it is far more reasonable to conclude that, if the Legislature meant to exclude mediation expenses as costs, it would have done so explicitly in subdivision (b). We conclude the legislation does not foreclose an award of mediation expenses as costs." (*Gibson, supra,* 49 Cal.App.4th at pp. 1207-1208.)

We found no published case authority holding receivership costs fall under section 1033.5, subdivision (c)(4), and the parties cite to none.[7] We conclude the legal rationale permitting cost awards for referees and private mediators should also apply to court-appointed receivers. The receiver is similarly situated with other court-appointed assistants. The receiver's services help the court fashion a temporary remedy necessary for the litigation to continue. Like the costs for other court-appointed assistants discussed above, the costs of receivership are not specifically allowed or prohibited by section 1033.5. If the Legislature had intended to exclude receivership costs from items allowable as cost, it would have been a simple matter to have listed them in subdivision (b) of section 1033.5. And as is the case with other court-appointed experts, the court can first charge the estate (claimed to be owned by both parties) and later shift the burden as an item of costs. (*Winston Square, supra*, 213 Cal.App.3d at p. 293.)

In conclusion, section 1033.5, subdivision (c)(4), confers upon the trial court the broad authority to consider awarding receivership costs if appropriate under the circumstances of the case. We recognize receivership costs are unique in that the designation of a prevailing party is but one of many factors the court must consider in exercising its discretion. As discussed in greater detail above, many of the exceptions to

---

[7] *Stanton v. Pratt* (1941) 18 Cal.2d 599 (*Stanton*), cited by respondents, does not hold receivership costs may not be awarded under section 1032. That case stands for the proposition a court may order parties who benefited from a receivership to bear the receiver's fees and expenses. (*Stanton, supra,* 18 Cal.2d at p. 603.) It rejected defendant's assertion the court erred in allowing costs because section 1032 prohibited costs when the judgment could have been rendered in a municipal court. It deemed the costs were allowed in that case as part of the principal recovery. (*Stanton, supra,* 18 Cal.2d at p. 603.)

27

the general rule involve the deliberation of numerous equitable factors. (See Clark, *supra*, § 637.1, subds. (b)-(r), pp. 1056-1068, fns. omitted.) We therefore reverse the portion of court's order granting the motion to tax the receivership costs and remand this issue to the trial court for a full hearing. The trial court is in the best position to determine whether awarding some or all of receivership fees to SCSD would be equitable under the particular facts of the case. The trial court must exercise its discretion to fashion an award that achieves justice and equity.

## DISPOSITION

The postjudgment order is reversed with respect to the receivership fees. In all other respects, the order is affirmed. Appellant shall recover its costs on appeal.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

FYBEL, J.

28

Filed 2/16/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT
DIVISION THREE

| | |
|---|---|
| SOUTHERN CALIFORNIA SUNBELT DEVELOPERS, INC., <br><br> Defendant and Appellant, <br><br> v. <br><br> BANYAN LIMITED PARTNERSHIP et al., <br><br> Plaintiffs and Respondents. | G051260 <br><br> (Super. Ct. No. 764271) <br><br> O R D E R |

      Attorney Mark Adams, President of California Receivership Group and attorney Benjamin P. Pugh of Enterprise Counsel Group (Appellant's counsel) have separately requested that our opinion filed January 19, 2017, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

      The opinion is ordered published in the Official Reports.


                        O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


FYBEL, J.